RONALD and Diane D., individually and as parents and Natural Guardian of TIMOTHY D., Plaintiffs,

v.

The TITUSVILLE AREA SCHOOL DISTRICT; John Reagle, personally and in his official capacity as the Assistant Superintendent of the Titusville Area School District; Amanda Hetrick, personally and in her official capacity as an Assistant Principal of the Titusville Area School District; Terry Kerr, personally and in his official capacity as a Principal and a Guidance Counselor of the Titusville Area School District; Charles Heller, personally and in his official capacity as an Assistant Principal and a Principal of the Titusville Area School District; Karen Jez, personally and in her official capacity as an Assistant Principal of the Titusville Area School District; Shari Wynkoop, personally and in her official capacity as a Supervisor of Instruction for the Titusville Area School District; Tammy McHenry, personally and in her

official capacity as a Guidance Counselor for the Titusville Area School District; and Mary Rose Ragon, personally and in her official capacity as a Guidance Counselor for the Titusville Area School District, Defendants.

No. CIV. A. 00–174 Erie.

United States District Court,
W.D. Pennsylvania.

July 6, 2001.

David C. Long, Oliveburg, PA, Michael L. Rosenfield, Pittsburgh, PA, for Plaintiffs.

James T. Marnen, Knox, McLaughlin, Gornall & Sennett, Erie, PA, for Defendants.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

Plaintiffs, Ronald and Diane D., initially instituted this action on behalf of their son, Timothy D., against the Titusville Area School District and various officials and administrators of the school district, for compensatory and punitive damages for alleged violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title IX of the Education Amendments of 1972, 86 Stat. 373, as amended, 20 U.S.C. § 1681, *et seq.* Presently pending before the Court is a motion by the Plaintiffs to amend their complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. For the reasons that follow, the Plaintiffs' motion shall be granted.

## I. BACKGROUND

Plaintiffs filed their original Complaint on June 8, 2000. Plaintiffs alleged a five-year pattern and practice on the part of the School District and various school administrators of deliberate indifference to recurrent verbal and physical harassment of their son Timothy, while he was a student in the Titusville Area School District. Complaint ¶¶ 2–6, 27–29. Plaintiffs claim a denial of equal protection of the law, a violation of substantive due process under the Fourteenth Amendment of the United States Constitution, and a denial of educational benefits on the basis of gender. Complaint ¶ 1. Plaintiffs sought declaratory and injunctive relief, as well as compensatory and punitive damages.

On March 19, 2001, Plaintiffs filed a motion to amend their original Complaint with a proposed Amended Complaint attached.[1] Plaintiffs assert that during discovery, they took the deposition of Thomas Hancock, the school psychologist for Defendant School District. See Plaintiffs' Motion to Amend the Complaint to Add Thomas Hancock as a Defendant and to add Two New Causes of Action, ¶ 1 [Doc. No. 17]. According to the Plaintiffs, Mr. Hancock's testimony "indicated his liability and that of the School District in failing to determine that Timothy D. was entitled to school services" pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.,* and Section 504 of the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. § 794. See *Id.* at ¶ 2. Plaintiffs seek to amend their Complaint to add Thomas Hancock as a Defendant, and assert causes of action under IDEA and the Rehabilitation Act.

In their proposed Amended Complaint, the Plaintiffs reiterate in detail the conduct to which Timothy was allegedly subjected during the sixth through tenth grades of school in the School District, during the 1994–1995 through 1998–1999 school years. Amended Complaint ¶¶ 34–69.

In February 1999, the Plaintiffs were advised by their attorney to request that the School District to conduct an educational and psychological evaluation of Timothy to determine his eligibility for

---

1. The differences between the proposed Amended Complaint and the original Complaint appear in the following paragraphs of the proposed Amended Complaint: 1, 7, 9, 11, 20, 21, 24, 25, 82, 83, 87, 88, 99, 108 and 109.

special education and related services. Amended Complaint ¶ 80. The School District concluded in a Comprehensive Evaluation Report ("the CER") dated April 19, 1999, that Timothy had willfully chosen not to be academically successful. Amended Complaint ¶ 82. The CER contained no recommendation of any types of aids or services for Timothy. Amended Complaint ¶ 82. Two meetings were held in May 1999 to discuss the School District's CER conclusions with the Plaintiffs. Amended Complaint ¶¶ 83–84, 88. After the second meeting, the School District issued a Notice of Recommended Assignment ("NORA") that Timothy attend a regular education program with no aids or services. Amended Complaint ¶ 90. Timothy attended Oil City Area High School during the 1999–2000 school year, until February 2000 when he quit due to emotional problems. Amended Complaint ¶ 92.

Plaintiffs allege that as a result of the Defendants' actions, the Defendants have deprived Timothy of his right to a free, appropriate public education as guaranteed by IDEA and the Rehabilitation Act, by failing to provide him with services which would protect him from sexually oriented harassment by schoolmates so that he felt comfortable attending school. Amended Complaint ¶¶ 108–109.

## II. STANDARD OF REVIEW

■ The Federal Rules of Civil Procedure provide that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Although the decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court, leave should, consistent with the command of Rule 15(a), be liberally granted. *Gay v. Petsock,* 917 F.2d 768, 772 (3rd Cir.1990); *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 518–19 (3rd Cir.1988). The United States Supreme Court has articulated the following standard to be applied in evaluating whether to grant or deny leave to amend:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 183, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

## III. DISCUSSION

■ Pursuant to IDEA, "children with disabilities" are entitled to "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs...." 20 U.S.C. § 1400(d). The Rehabilitation Act, while phrased differently, guarantees the same "free appropriate public education" to each qualified handicapped person. *W.B. v. Matula,* 67 F.3d 484, 492–93 (3rd Cir.1995). "Children with disabilities" includes not only those traditionally recognized as handicapped, such as those children with mental retardation, hearing impairments, speech or language impairments and visual impairments, but also those with "serious emotional disturbance ... who by reason thereof, need special education and related services." 20 U.S.C. § 1401(3)(A). IDEA requires state and local educational agencies receiving federal assistance under the Act to establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education. 20 U.S.C. § 1415(a).

■ In Pennsylvania, the statutory vehicle for special education is found in the

Public School Code of 1949, 24 P.S. § 13–1371, *et seq.* Section 13–1372 provides for the adoption of regulations by the State Board of Education for the education of "exceptional children." These regulations appear at 22 Pa.Code §§ 14.1 through 14.74. Regulations concerning the "procedural safeguards" are found at 22 Pa.Code §§ 14.61 through 14.68. The regulations allow parental involvement in matters concerning the child's educational program, and allow parents to obtain administrative review of decisions they deem unsatisfactory or inappropriate.

IDEA permits aggrieved parties who are dissatisfied with the outcome of the administrative process to bring a civil action in either state court or in a federal district court. 20 U.S.C. § 1415(i)(2)(A). However, IDEA also requires that "before the filing of a civil action ... seeking relief that is also available under this subchapter," a plaintiff must exhaust the IDEA procedures. 20 U.S.C. § 1415(*l*).

 Defendants argue that the proposed Amended Complaint attempts to add claims over which the Court lacks subject matter jurisdiction because the Plaintiffs failed to exhaust their administrative remedies under IDEA, and therefore the allowance of the proposed amendment would be futile. A court may justify the denial of a motion to amend if the amendment is found to be futile. *Foman,* 371 U.S. at 182, 83 S.Ct. 227. An amendment is considered futile "if the amendment will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss." *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3rd Cir. 1988). In determining futility, the court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3rd Cir.1997). Therefore, a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Id.*

At oral argument, the nature of the Plaintiffs' claim was further refined:

. . . . .

THE COURT: ... [T]he narrow issue ... seems to be whether or not 1983 permits a cause of action in a situation where the claim is based upon ... alleged reckless or ... indifferent conduct on the part of the district in failing to isolate or pinpoint a child who is in need of IEP services, is that essentially it?

MR. ROSENFIELD: I think that's a good way to frame the issue, yes.

THE COURT: Implicit in that question is whether or not under those circumstances exhaustion is nevertheless required[.]

. . . . .

See Hearing on Pending Motions Transcript, April 23, 2001, pp. 19–20 [Doc. No. 28]. Plaintiffs argue that under the unique circumstances of this case exhaustion is not required consistent with the Third Circuit's holding in *W.B. v. Matula,* 67 F.3d 484 (3rd Cir.1995).

In *Matula,* the plaintiff brought suit on behalf of her son pursuant to the Rehabilitation Act and IDEA, alleging that her son had been deprived of his right to a free appropriate public education. After proceeding through the administrative process, the plaintiff ultimately succeeded in having her son evaluated, classified as neurologically impaired and provided with special education services. She then sought damages for the defendants' alleged persistent refusal to evaluate, classify and provide necessary educational services to her son for the period of time before the school agreed to provide these services. *Matula,* 67 F.3d at 488.

In examining the exhaustion requirement, the Third Circuit first noted that the

exhaustion requirement may not be circumvented by casting an IDEA claim as a § 1983 action predicated on IDEA. *Matula*, 67 F.3d at 495. The court then found exhaustion unnecessary based on the following rationale:

> Beginning with the plain language of [§ 1415(*l*) ] ... it is apparent that the exhaustion requirement is limited to actions seeking relief "also available" under IDEA. We held *supra* that damages are available in a § 1983 action, but IDEA itself makes no mention of such relief. Hence by its plain terms [§ 1415(*l*) ] does not require exhaustion where the relief sought is unavailable in an administrative proceeding.
>
> Moreover, the legislative history of [§ 1415(*l*) ] clarifies that "[e]xhaustion of the [IDEA] administrative remedies would ... be excused where ... resort to those proceedings would be futile." (citation omitted).
>
> Accordingly, we have held that, where the relief sought in a civil action is *not* available in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused. (citation omitted).

*Matula*, 67 F.3d at 496. The court held that it would be futile for the plaintiffs to exhaust their administrative remedies because the relief sought was unavailable in the IDEA administrative proceedings. *Id.* The court also excused exhaustion on the basis that the child's classification and placement had been resolved in numerous administrative proceedings, and therefore a factual record had been developed. *Id.*[2]

Like the plaintiffs in *Matula*, the Plaintiffs' present educational situation is not at issue. Amended Complaint ¶ 92.[3] Defendants agreed to transfer Timothy to the Oil City Area High School. Amended Complaint ¶ 92.[4] Importantly, the relief sought here is not prospective, but solely retrospective in nature in order to compensate Timothy for his injuries allegedly caused by the Defendants. *Cf. Padilla v. School District No. 1*, 233 F.3d 1268 (10th Cir.2000) (stating that IDEA's administrative remedies are oriented to providing prospective educational benefits; plaintiff's ADA suit made no claim relative to the current educational situation, exhaustion not required). We agree with the Plaintiffs that the administrative process is not capable of providing the relief they request and exhaustion is not required under these circumstances. Therefore, the Plaintiffs' motion to amend the complaint shall be granted.

---

**2.** *See also O.F. v. Chester Upland School District*, 2000 WL 424276 (E.D.Pa.2000); *Jeffery Y. v. St. Marys Area School District*, 967 F.Supp. 852 (W.D.Pa.1997).

**3.** Paragraph 92 of the Plaintiffs' Amended Complaint states the following:

> Rather than take appropriate action against Tim's harassers, on June 9, 1999, defendant Wynkoop sent Tim's mother a letter indicating that defendant District was willing to proceed with negotiations with the Oil City school district to have Tim transferred to that school district. Tim attended the Oil City Area High School from the beginning of the 1999–2000 academic year until February 2000 when he quit due to emotional problems.

Amended Complaint ¶ 92.

**4.** The School District issued a Notice of Recommended Assignment ("NORA") that Timothy attend a regular education program with no aids or services. Amended Complaint ¶ 90. Shortly thereafter, the Plaintiffs and the School District came to an agreement about Timothy's transfer. See Hearing on Pending Motions Transcript, April 23, 2001 pp. 5–6 [Doc. No. 28]. Therefore, Timothy's current educational issues were settled with the School District. *See, e.g., Witte v. Clark County School District*, 197 F.3d 1271 (9th Cir. 1999) (plaintiff used administrative procedures to secure remedies available under IDEA, exhaustion not required since all educational issues resolved).

## IV. CONCLUSION

An appropriate Order follows.

### *ORDER*

AND NOW, this 6th day of July, 2001, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiffs' Motion to Amend the Complaint to add Thomas Hancock as a Defendant and to add Two New Causes of Action [Doc. No. 17] is GRANTED. The Plaintiffs shall file an Amended Complaint within ten (10) days from the date of this Court's Order.