Clifford McCACHREN III, et al, Plaintiffs,

v.

The BLACKLICK VALLEY SCHOOL DISTRICT, et al, Defendants.

Damian McCachren, et al, Plaintiff,

v.

The Blacklick Valley School District, et al, Defendants.

Nos. 01–CV–162–J, 01–CV–163–J.

United States District Court, W.D. Pennsylvania.

July 16, 2002.

David C. Long, Oliveburg, PA, Michael L. Rosenfield, Pittsburgh, PA, for Plaintiffs.

Carl P. Beard, Roberta Binder Heath, Andrews & Wagner, Altoona, PA, for Defendants.

### MEMORANDUM OPINION and ORDER

D. BROOKS SMITH, Chief Judge.

These actions are brought by two minor students and their parents against the Blacklick Valley School District, its school board, and various individual officers of the school district. The defendants have moved to dismiss both actions. Because of the substantial similarity between these

actions, I resolve both motions to dismiss in this single opinion. In short, I will grant the motions to dismiss only in small part, dismissing the claims against the individual defendants in their official capacities. The remaining claims will stand, and the balance of the motions to dismiss will be denied.

## I.

Because the parties are already familiar with the allegations in the complaints, I will not rehearse them in detail here. Briefly, both Clifford and Damian McCachren have a history of educational and disciplinary difficulties in different schools within the Blacklick Valley School District. According to the complaints, both boys should have received learning support services from Blacklick. However, the school district and its officers failed to provide such learning support, as required under federal laws.

Seeking to recover compensatory and punitive damages for the injuries they have already suffered, Clifford and Damian, through and with their parents, filed two separate actions on May 21, 2001. The complaints allege that the defendants failed to comply with the requirements of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 700, *et seq.*; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*; and the Due Process Clause of the Fourteenth Amendment, which the plaintiffs seek to enforce via an action under 42 U.S.C. § 1983. In addition to the Blacklick Valley School District, the complaints also name as defendants the Blacklick Valley School Board and various individuals in both their personal and official capacities.

The individual defendants include the following: Donald Thompson, Superintendent of the school district; Thomas Kupchella, principal of the Blacklick Valley Junior/Senior High School;[1] Carole Kakabar, principal of the Blacklick Valley Junior/Senior High School; Deborah Pollino, Director of Special Education and Section 504 Coordinator; and Frank Frontino, At-Risk/Academic Attention Coordinator.

The defendants have moved to dismiss the complaints, raising various arguments under Federal Rule of Civil Procedure 12(b)(6). The most important argument appears in the defendants' supplemental motions to dismiss, which assert that the plaintiffs have failed to exhaust administrative remedies as required by statute. The individual defendants also assert that they have qualified immunity against the § 1983 claim and that they cannot be individually liable under either the Rehabilitation Act or the ADA. In addition, the defendants claim that they cannot be liable for punitive damages.

## II.

When considering a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), I must accept as true all facts alleged in the complaint and view them in the light most favorable to the plaintiff. *Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1168 (3d Cir.1997); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). I must also presume at the pleading stage that general factual allegations "embrace those specific facts necessary to support the claim." *Lujan v.*

---

**1.** Kupchella is named as a defendant in only Clifford's action, Civil Action Number 01–162

J.

*Nat'l Wildlife Fed.*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).

In order to prevail on a Rule 12(b)(6) motion, the movant must establish that no relief could be granted under any set of facts that the plaintiff could prove. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Trump Hotels & Casino Resorts v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

## III.

■ The first argument the defendants raise in their motions to dismiss is the plaintiffs' failure to exhaust the available administrative remedies. The IDEA mandates exhaustion prior to filing any civil action: "before the filing of a civil action ... seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(*l*); *see also Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272 (3d Cir.1996). According to the defendants, the plaintiffs here have not even attempted to invoke the administrative remedies available under the IDEA, and therefore these civil actions are barred by § 1415(*l*). On this basis, the defendants contend that all of the claims against both Blacklick and the individual defendants must be dismissed.

This argument has already been conclusively rejected by the Third Circuit, however. In *W.B. v. Matula*, 67 F.3d 484 (3d Cir.1995), the Third Circuit looked to the plain language of § 1415 and found that the exhaustion requirement is limited to actions seeking relief that is "also available" under the IDEA.[2] *See id.* at 496. According to the Third Circuit, the IDEA itself makes no mention of damages as an available type of relief, though damages are available in a § 1983 action for violations of the IDEA. *See id.* Thus, monetary damages are not "relief that is also available" under the IDEA, *see* 20 U.S.C. § 1415(*l*), and therefore the IDEA's exhaustion requirement does not apply to actions seeking such relief. *See Matula*, 67 F.3d at 496. Because the IDEA does not itself make damages available, recourse to the IDEA's administrative remedies is effectively futile. *See id.; see also Lester H. v. Gilhool*, 916 F.2d 865 (3d Cir.1990).

The defendants' make various protestations about the propriety of first seeking administrative relief under the IDEA, but the fact remains that the plaintiffs here have sought only compensatory and punitive damages under § 1983 for the defendants' alleged violations of the plaintiffs' rights under the IDEA. Under the holding of *Matula*, the exhaustion requirement of § 1415(*l*) does not apply to such an action. The plaintiffs' failure to exhaust the available administrative remedies is therefore no bar to their proceeding with these actions.

## IV.

The bulk of the defendants' arguments in support of their Rule 12(b)(6) motions

**2.** The *Matula* court addressed the exhaustion requirement that then appeared in § 1415(f). The IDEA has since been amended. *See* Individuals with Disabilities Education Act Amendments for 1997, Pub.L. No. 105–17, Title I, § 101, June 4, 1997, 111 Stat. 88. The exhaustion requirement is now codified at 20 U.S.C. § 1415(*l*). The 1997 amendments in no way affect *Matula*'s holding, as the language of the exhaustion requirement is unchanged.

relate to the alleged liability of the individual defendants. I will therefore consider all of the arguments regarding the individual defendants separately from the arguments regarding the Blacklick Valley School District and its school board. With respect to the individual defendants, I first consider the plaintiffs' claims under the IDEA and § 1983. I will then address the plaintiffs' claims under the Rehabilitation Act and the ADA.

## A.

In seeking to dismiss the IDEA and § 1983 claims against themselves, the individual defendants raise several different arguments. They first claim that they enjoy qualified immunity from a suit of this kind. They then argue that the actions against them in their official capacities are redundant with the plaintiffs' claims against the school district and school board. Finally, they challenge the general sufficiency of the pleadings in the complaints.

## 1.

■ As the individual defendants correctly point out, they may be entitled to qualified immunity from the claims against them in their personal capacities. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Melo v. Hafer,* 912 F.2d 628, 637 (3d Cir.1990) (citing Supreme Court cases). Of course, qualified immunity is not available to individual defendants in their official capacities. *See Brandon v. Holt,* 469 U.S. 464, 472, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). As the Third Circuit has instructed, an IDEA plaintiff must do more than make general allegations that she has been denied a free, appropriate public education. *See Matula,* 67 F.3d at 499–500. "[R]ather, a plaintiff must demonstrate that the particular ac-

tions taken by defendants were impermissible under law established at that time." *Id.* at 500.

In both actions, the plaintiffs have made numerous, specific allegations that the individual defendants have personally participated in actions that were clearly impermissible under the IDEA. For example, Clifford alleges *inter alia* that the alternative education program in which he was placed did not meet minimum guidelines, C.A. No. 01–162 J, dkt. no. 1 ¶ 62; that the defendants failed to comply with various procedural obligations under the IDEA, *id.* at ¶ 74; that the defendants failed to provide Clifford and his parents with the required notice of their rights, *id.* at ¶ 86; and that the defendants did not conduct evaluations or assessments of Clifford as mandated by law, *id.* at ¶ 91. Damian similarly alleges *inter alia* that the defendants did not provide an adequate alternative education program for him, C.A. No. 01–162 J, dkt. no. 1 ¶ 72; that the defendants failed to provide appropriate evaluations or counseling for him, *id.* at ¶ 81; and that the defendants failed to inform Damian and his parents of their statutory rights. *Id.* Further, the plaintiffs have alleged that the individual defendants have had personal involvement in these violations. *See* C.A. No. 01–162 J, dkt. no. 1 ¶¶ 105–107; C.A. No. 01–162 J, dkt. no. 1 ¶ 88–92. This alleged involvement in conduct that violates established law is sufficient at the motion to dismiss stage to defeat the individual defendants' assertion of qualified immunity. Moreover, the individual defendants cite no statute, case, or other legal authority that shows their conduct to be consistent with established law. Therefore, the plaintiffs' IDEA and § 1983 claims against the individual defendants in their personal capacities will not be dismissed on the basis of qualified immunity.

## 2.

With respect the claims against the individual defendants in their official capacities, the defendants note that these claims are duplicative of the claims against the school district and school board. Where individual defendants are named in their official capacities, only the liability of the agency which the officers represent is really at issue. *See Brandon v. Holt,* 469 U.S. 464, 471–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Owen v. City of Independence,* 445 U.S. 622, 638 n. 18, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Melo v. Hafer,* 912 F.2d 628 (3d Cir.1990).

Given the allegations in the complaints and the course of proceedings thus far, there is no reason to continue the claims against the individual defendants in their official capacities: those defendants are already potentially liable in their personal capacities, and the potential liability of the school district and school board for the claims against them makes the official capacity actions needlessly duplicative. I will therefore dismiss the official capacity actions against all the individual defendants. These individuals remain defendants in the case, however, because of their potential liability in their personal capacities.

## 3.

Finally, the individual defendants challenge the general sufficiency of the allegations as too conclusory. While the defendants' exact argument is somewhat opaque, there can be little doubt in light of the specific allegations referred to above, in Part IV.A.1, that the plaintiffs' allegations satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8. Therefore, as explained above, I will deny the defendants' motion to dismiss the claims against the individual defendants in their personal capacities.

## B.

■ The individual defendants separately argue that the claims against them under the Rehabilitation Act and the ADA should be dismissed because individuals cannot be liable under these statutes. I am unpersuaded by this argument.

As a preliminary matter, it is helpful to review the nature of the remedies that are available under both the Rehabilitation Act and the ADA. The Rehabilitation Act contains three primary sections, Sections 501, 503 and 504. *See* 29 U.S.C. §§ 791, 793, 794. Section 501 prohibits discrimination on the basis of disability by federal agencies in the employment context; Section 503 prohibits such employment discrimination by federal contractors. *See* 29 U.S.C. §§ 791, 793. Section 504, however, applies more broadly to discrimination "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Section 505 extends the rights, remedies, and procedures of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.,* to all persons protected under Section 504 of the Rehabilitation Act. *See* 29 U.S.C. § 794a. Although Title VI supplies the statutory remedies to most Section 504 claims, any Section 504 claim "alleging employment discrimination" is governed by the standards applicable to action under Title I of the ADA. *See* 29 U.S.C. § 794(d).[3]

The ADA is divided into four different titles. Title I extends the antidiscrimination provisions of the Rehabilitation Act to all employers who are already covered by Title VII of the Civil Rights Act of

---

**3.** As explained immediately *infra,* Title I of the ADA references Title VII of the Civil Rights Act of 1964, *not* Title VI.

1964. *See* 42 U.S.C. §§ 12111–17. Title II applies to public services, like education or transportation. *See* 42 U.S.C. §§ 12131–65. Title III regulates public accommodations, *see* 42 U.S.C. §§ 12181–89, and Title IV covers several matters including telecommunications. *See* 42 U.S.C. §§ 12201–13. For the purposes of this case, it is most important to distinguish Title I from Title II. Notably, the enforcement mechanism for Title I of the ADA is Title VII of the Civil Rights Act, *see* 42 U.S.C. § 12117, while the enforcement mechanism for Title II of the ADA is Section 505 of the Rehabilitation Act, and therefore derivatively Title VI of the Civil Rights Act. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2).

The foregoing statutory overview clarifies that the legal standards for claims raised under the Rehabilitation Act and the ADA differ depending on whether or not the action is brought to remedy employment discrimination. An employment discrimination suit falls under Title I of the ADA, not Title II, so the remedies available for such employment discrimination are Title VII remedies, not Title VI. *See* 42 U.S.C. §§ 12117(a), 12133. Under Section 504 of the Rehabilitation Act, only claims alleging employment discrimination rely upon Title VII standards, *see* 29 U.S.C. § 794(d), though Title VI remedies are generally available for other Section 504 actions. *See* 29 U.S.C. § 794a.

It is quite clear from the complaints that the plaintiffs here are not alleging employment discrimination claims. For one, the complaints specifically refer to Section 504 of the Rehabilitation Act and Title II of the ADA. *See* C.A. No. 01–162 J, dkt. no. 1 ¶ 11; C.A. No. 01–163 J, dkt. no. 1 ¶ 12.[4]

More importantly, it is obvious from the averments in the complaints that these actions are related to the alleged statutory violations in the educational services that were provided, or not provided, to the plaintiffs. Such violations clearly fall under Title II of the ADA—not Title I—and they are not subject to the Title VII standards used for employment discrimination claims under Section 504 of the Rehabilitation Act.

In light of the applicable statutory framework, the deficiencies in the defendants' argument that individuals cannot be liable under the Rehabilitation Act and the ADA should become transparent. The defendants have primarily relied upon *employment discrimination* cases in which district courts have concluded that Title VII's remedies do not apply to individuals. These district court cases are not mandatory authorities that I must follow, and they are not even persuasive because they are inapposite. At bottom, the cases cited by the defendants have dismissed employment discrimination claims against individual defendants under the Rehabilitation Act and ADA on the theory that such individuals are not "employers" within the meaning of Title VII. That theory has no application outside the employment discrimination context.

In *Haltek v. Village of Park Forest,* 864 F.Supp. 802 (N.D.Ill.1994), the plaintiffs brought an employment discrimination action under Title I of the ADA and Section 504 of the Rehabilitation Act. *See id.* at 803 (reciting the counts in the plaintiff's amended complaint). The defendants sought dismissal on the ground that they were not "employers" within the meaning of Title VII. The court reviewed a number

---

**4.** The references to Title II are actually references to 42 U.S.C. §§ 12161–65, which cover public transportation and commuter rail. A fair reading of the complaint, however, indi-

cates that the plaintiffs meant to cite 42 U.S.C. §§ 12131–34, which apply to discrimination against qualified individuals with disabilities.

of employment discrimination cases and concluded that individuals were not included in the definition of "employer" and therefore could not be liable under Title VII, the Rehabilitation Act, and the ADA.

Similarly, *Clarke v. Whitney*, 907 F.Supp. 893 (E.D.Pa.1995), was an employment discrimination case brought under the ADA. The opinion of the court did not clarify whether the ADA claim was brought under Title I or Title II, *see id.* at 894 (citing 42 U.S.C. §§ 12101–213),[5] but instead simply argued that there was no remedy against individuals under the ADA because there was no similar remedy under Title VII.[6] The court reasoned that Title VII was designed to create *respondeat superior* liability only, so no claim against the individuals would lie. *See Clarke*, 907 F.Supp. at 895.

Finally, *Saylor v. Ridge*, 989 F.Supp. 680 (E.D.Pa.1998), involved employment discrimination claims brought under both Titles I and II of the ADA as well as the Rehabilitation Act.[7] Without distinguishing the different remedies available under Titles I and II of the ADA, the court rejected the ADA claims against the individual defendant, citing only *Clarke* as authority.

These three cases are not controlling here because all three of them are employment discrimination cases. As has already been explained, the remedies and standards that exist under the ADA differ when a plaintiff brings an employment discrimination claim compared to other discrimination claims. Notwithstanding the broad statements of law contained in some of these cases, *see, e.g., Clarke*, 907 F.Supp. at 895 ("there is no individual liability under the ADA"), these authorities are materially different from the instant case, and they do not lead to the conclusion that the plaintiffs here—who do not raise employment discrimination claims—cannot seek damages from the individual defendants.

The only other case cited by the defendants is *BD v. DeBuono*, 130 F.Supp.2d 401 (S.D.N.Y.2000).[8] In that case, the court found that "Plaintiffs are barred from bringing their Rehabilitation Act claims against the individual defendants." *Id.* at 440. However, the court reached this conclusion only because the plaintiffs were not barred from suing the state directly, meaning that there was "no justification for permitting claims against defendants in their official capacities." *Id.* at 439. This is the same reason I gave *supra*, Part IV.A.2, for dismissing the official capacity claims against the individual defendants; those claims are duplicative of the claims against the school district and school board. There is nothing similarly duplicative, however, about the Rehabilitation Act and ADA claims against the individual defendants in their personal capacities. Hence, *DeBuono* provides no basis for dismissing these claims.

Finally, I note that the result in *Matula* suggests that the Third Circuit sees no

---

**5.** The Court also noted that "[m]uch of the ADA's language is copied from Title VII," *Clarke*, 907 F.Supp. at 894 n. 1, without recognizing that Title VII is the basis for Title I of the ADA while Title II of the ADA incorporates the remedies of Section 504 of the Rehabilitation, which in turn incorporates the remedies of Title VI, *not* Title VII. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a.

**6.** As the *Clarke* court correctly noted, however, the issue of whether there are remedies available against individuals under Title VII is itself an open question in the Third Circuit.

**7.** Because the action involved allegations of employment discrimination, the remedies available under the Rehabilitation Act would have been those of Title VII, not Title VI. *See* 29 U.S.C. § 794(d).

**8.** The defendants misidentify this case as "*BD v. Kaplan.*"

difficulty in holding individuals liable for their violations of Section 504 of the Rehabilitation Act and Title II of the ADA. The *Matula* court permitted claims against numerous individual defendants to proceed without even raising a question about whether individual defendants can be liable for violations of those statutes. While the holding of *Matula* does not directly undermine the individual defendants' argument that they cannot be liable, *Matula* does suggest that this argument is far less meritorious than it at first appears. Given the differences in statutory treatment of employment discrimination claims and other civil rights claims—and the complete lack relevant authority, as explained above—there is no basis for dismissing the Rehabilitation Act and ADA claims against the individual defendants.

## V.

The defendants next argue that they cannot be liable under § 1983 because Congress did not abrogate the Eleventh Amendment immunity in enacting that statute, citing *Seminole Tribe v. Florida,* 517, U.S. 44, 56, 60, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).[9] The defendants completely misunderstand the Eleventh Amendment immunity and the scope of § 1983. In *Monell v. New York Dept. of Social Servs.,* 436 U.S. 658,

9. It is somewhat unclear to which of the defendants this argument is supposed to apply. Although the subtitle suggests that it is limited to the individual defendants only, the argument itself constructed somewhat more broadly to include the school district and school board. In either case, the result is the same.

10. In their complaints, the plaintiffs specifically state that they seek punitive damages from only the individual defendants and not the school district and school board. *See* C.A.

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court concluded that "Congress *did* intend municipalities and other local government units to be included among the persons to whom § 1983 applies." *Id.* at 690, 98 S.Ct. 2018. Thus, local government units like the school district and school board, as well as their officers, are treated differently than the States and State officials, which are not "persons" within the meaning of § 1983. *See Will,* 491 U.S. at 71, 109 S.Ct. 2304. This difference should not be surprising, considering that "local government units . . . are not considered part of the State for Eleventh Amendment purposes." *Monell,* 436 U.S. at 690 n. 54, 98 S.Ct. 2018. Accordingly, I will not dismiss the § 1983 claims against any of the defendants.

## VI.

■ Finally, the Blacklick Valley School District and its school board argue that they cannot be liable for punitive damages. Under the current law of the Third Circuit, these defendants are correct: "we find that Title II of the ADA and Section 504 of the Rehabilitation Act lack any indicia of Congress' intent to override the settled common law immunity of municipalities from punitive damages." *Doe v. County of Centre,* 242 F.3d 437, 457 (3d Cir.2001). No claims for punitive damages against the school district and school board will be permitted to proceed.[10]

No. 01–162 J, dkt. no. 1, request for relief ¶ 2; C.A. No. 01–163 J, dkt. no. 1, request for relief ¶ 2. However, in their briefs opposing the motions to dismiss, the plaintiffs attempted to counter the defendants' arguments that punitive damages are not available against the school district and school board. Third Circuit law clearly forecloses punitive damages against the school district and school board, but the defendants have not offered any argument showing that such damages are not available against the individual defendants from whom the plaintiffs originally

## VII.

In summary, all of plaintiffs' claims survive the defendants' motions to dismiss. The only exceptions are the official capacity claims against the individual defendants; because these are needlessly duplicative of the actions against the school district and school board, I will dismiss those claims. All of the personal capacity claims against the individual defendants survive, as do all of the claims against the school district and school board. Accordingly, it is hereby

ORDERED AND DIRECTED, this *16th* day of July 2002, that defendants' motions to dismiss are GRANTED IN PART AND DENIED IN PART as follows:

• in Civil Action No. 01–162 J, the defendants' motion to dismiss, dkt. no. 3, is GRANTED with respect to the personal capacity claims against all individual defendants and DENIED in all other respects;

• in Civil Action No. 01–163 J, the defendants' motion to dismiss, dkt. no. 3, is GRANTED with respect to the personal capacity claims against all individual defendants and DENIED in all other respects.

sought punitive damages. Those claims will proceed.