John **HICKS**, a minor through his parents and legal guardians John & Patricia **HICKS**, and John & Patricia Hicks, Plaintiffs,

v.

The **PURCHASE LINE SCHOOL DISTRICT**, et al., Defendants.

Civil Action No. 01–979.

United States District Court, W.D. Pennsylvania.

Feb. 25, 2003.

*MEMORANDUM*

LANCASTER, District Judge.

This is a civil rights action. Plaintiffs John Hicks ("Hicks") and his parents, John and Patricia Hicks, have brought this lawsuit under the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.;* the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Americans With Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101. Plaintiffs are seeking money damages from defendant Purchase Line School District ("the district") and various individual administrators for their alleged violation of federal laws that protect the rights of individuals with disabilities to a free appropriate public education, their right to be free from discrimination based upon their disability, and their right to due process of law.

Defendants have filed a motion for summary judgment, arguing that 1) this court lacks subject matter jurisdiction over this matter; 2) there is no genuine issue of material fact regarding defendants' child find obligation or Hicks's alleged disability; and 3) the individual defendants are entitled to qualified immunity. For the reasons which follow, defendants' motion is denied.

## I. BACKGROUND

Hicks is a 2001 graduate of the school district. He attended the district's schools from third grade through his graduation. His elementary school grades were primarily A's and B's; however, his grades from seventh grade until graduation were well below prior performance. Additionally, he suffered from chronic discipline problems that affected his academic performance.

When the district and the individual defendants were made aware of Hicks' per-

David C. Long, Oliveburg, PA, Michael L. Rosenfield, Pittsburgh, PA, for plaintiffs.

Scott G. Dunlop, Kathryn M. Kenyon, Marshall, Dennehey, Warner, Coleman & Goggin, Pittsburgh, PA, for defendants.

formance, they made no attempt to formally evaluate him for potential disabilities. His continual and pervasive behavior problems were never assessed to see if they were symptomatic of any potential disabilities. Moreover, the district failed to provide plaintiff parents with written notice of their due process rights to have Hicks evaluated.

Plaintiffs filed this lawsuit seeking money damages from defendants to compensate for their alleged violation of the federal laws that ensure students with disabilities receive a free appropriate public education.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. *Id.* In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the

nonmoving party. *Id.* at 248–49, 106 S.Ct. 2505.

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law.

It is on this standard that the court has reviewed defendants' motion and plaintiffs' response thereto.

## III.  DISCUSSION

### A.  Subject–Matter Jurisdiction

Initially, defendants argue that the court lacks subject-matter jurisdiction over this action. They contend that because plaintiffs failed to exhaust available administrative remedies before filing this lawsuit, their claims are barred. As one district court recently observed, "[t]his argument has already been conclusively rejected by the Third Circuit [Court of Appeals]." *McCachren v. Blacklick Valley Sch. Dist.*, 217 F.Supp.2d 594, 597 (W.D.Pa.2002) (*citing W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995)).

Exhaustion of administrative remedies is generally a prerequisite to a civil action grounded in IDEA. *See* 20 U.S.C. § 1415(*l*); *see also Matula*, 67 F.3d at 495; *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272 (3d Cir.1996). If a plaintiff seeks relief that is unavailable in administrative proceedings, however, exhaustion is not required. *Id.* In *Matula*, the court of appeals held that, "where the relief sought in a civil action is *not* available in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused." *Matula*, 67 F.3d at 496; *citing Honig v. Doe*, 484 U.S. 305, 326–27, 108 S.Ct. 592, 98

L.Ed.2d 686 (1988) (holding that under IDEA's predecessor statute "parents may bypass the administrative process where exhaustion would be futile or inadequate").

Moreover, defendants' argument relies, almost exclusively, upon a district court opinion that is distinguishable from this case. *See Lindsley v. Girard Sch. Dist.*, 213 F.Supp.2d 523 (W.D.Pa.2002). In *Lindsley* the court refused to excuse a plaintiff's failure to exhaust administrative remedies in an IDEA case because such remedies where still available to correct the alleged § 1983 violation. *Id.* at 537; *citing inter alia Corpus Christi Indep. Sch. Dist.*, 31 IDELR 41 (1991) (holding that parent's claims for compensatory education was premature in light of fact that child had not been determined eligible for special education services; school district was ordered to assess the student in all suspected areas of disability as soon as practicable).

■■■ Hicks, however, has graduated from the district and is seeking retrospective relief only in the form of money damages that are unavailable through any administrative process.[1] *See Ronald D. v. Titusville Area Sch. Dist.*, 159 F.Supp.2d 857, 862 (W.D.Pa.2001). Therefore, plaintiffs' are excused from IDEA's exhaustion requirement, and this court has subject-matter jurisdiction over this action.[2] *Id.; see also McCachren*, 217 F.Supp.2d at 597.

### B. *Genuine Issues of Material Fact—Defendants' Child Find Obligation & John's Alleged Disability*

Defendants next argue that plaintiffs have failed to raise a genuine issue of material fact regarding whether they failed in their obligation to identify if Hicks had a disability and to determine whether he was actually disabled. We find, however, that plaintiffs have produced sufficient evidence on these issues to withstand summary judgment.

Under IDEA, school districts are charged with ensuring that "[a]ll children with disabilities ... regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated ..." 20 U.S.C. § 1412(a)(3)(A). Here, there is no question that the district was subject to this child find obligation. The issue is whether it fulfilled its duty.

■■■ Importantly, plaintiffs did not have a duty to identify, locate, or evaluate Hicks pursuant to IDEA. This obligation falls squarely upon the district. *See e.g., M.C. v. Central Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir.1996). The court of appeals has clearly held that "[a] child's entitlement to special education should not depend upon the vigilance of parents (who may not be sufficiently sophisticated to comprehend the problem) nor be abridged because the district's behavior did not rise to the level of slothfulness or bad faith." *Id.*

1. This also indicates that plaintiffs' claims are not moot as the defendants argue. Here, plaintiffs are seeking compensation for alleged *past* violations of John's right to a free appropriate public education. Therefore, John's graduation does not moot this case. *See e.g., Ronald D.*, 159 F.Supp.2d at 862.

2. It also follows *a fortiori* that plaintiffs may seek money damages. *See McCachren*, 217 F.Supp.2d at 597. There, the court correctly observed that "[a]ccording to the Third Circuit [Court of Appeals], the IDEA itself makes no mention of damages as an available type of relief, though damages are available in an § 1983 action for violations of the IDEA. *See Matula*, 67 F.3d at 496. Thus, monetary damages are not 'relief that is also available' under the IDEA ... and therefore the IDEA's exhaustion requirement does not apply to actions seeking such relief." *Id.*

■ Here, plaintiffs have adduced sufficient record evidence from which a juror could reasonably believe that defendants did not fulfill their child find obligations. Specifically, defendants were aware of John's systematic academic and behavior decline from seventh grade onward. From plaintiffs' evidence, when the district was made aware of John's suspected disability, instead of performing a formal evaluation, asked his parents to monitor his progress. For example, defendant Campisano, a guidance counselor, admitted that there was a possibility that Hicks suffered from a learning disability; yet, the district failed to act. From her deposition, she stated:

Q: If you look on the second page of Exhibit 22, and this is under the category called recommendations, number three says 'John's possible candidacy for learning disability because of a discrepancy between verbal IQ and performance IQ on the WPPSI [a standardized test] was explained to the parents. They will monitor school situation and request school psychological testing if school problems arise in the future.' Do you see that?

A: Yes, I do.

Q: What does that mean?

A: That means if that parent's see a problem in school, they will notify us for psychological testing.

Q: But you were put on notice as well that there is a possible learning disability with this boy, were you not?

A: That's telling us there's a possibility.

Q: You do understand, do you not, that IDEA puts no requirement whatsoever on the parents to notify the school of any problem involving their child?

A: Yes.

Q: That's strictly a responsibility the school has?

A: Yes.

Here, defendants are not entitled to summary judgment regarding their child find duty because the record demonstrates that, at a minimum, there is a genuine issue of material fact on this point.

Additionally, defendants have failed to show that there is not a genuine issue of material fact with respect to whether or not John had (or has) a disability. We have been presented with conflicting expert reports by the parties. Plaintiffs' expert claims John may have suffered a disability while a student at the district and defendants' expert argues to the contrary. We have scheduled a *Daubert* hearing to determine the qualifications of the parties experts. At this point, therefore, we cannot grant summary judgment on this issue.

### C.  *Qualified Immunity*

■ Defendants finally argue that the individual defendants, district administrators, are entitled to qualified immunity. They contend that these defendants are entitled to such immunity because they allegedly did not believe John was disabled and thus did not knowingly violate his rights. *See e.g. Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (holding that test for qualified immunity is whether facts show individual violated a constitutional right). Viewing this record in the light most favorable to plaintiffs, it cannot be said that these individual defendants did not violate the IDEA's clearly established child find obligations.

As the court of appeals held in *Matula,* IDEA requires that covered children "be located and evaluated within a reasonable time, and . . . a school official who failed to carry out his or her . . . duty within a reasonable time would understand that what he is doing violates that duty." *Matula,* 67 F.3d at 501. Here, as previously discussed, there is sufficient record evi-

dence to indicate that a reasonable juror could believe that the individual defendants were derelict in their child find duties.

Defendants argument that John's rights under IDEA were not clearly established because they were allegedly unaware that he suffered from a disability misses the point. The individual defendants *should* have suspected that he had a disability and referred him for a formal evaluation, which they failed to do. There were numerous red flags which should have alerted these administrators: grades which when compared to John's tested ability, demonstrated severe academic underachievement; John's chronic discipline problems from seventh grade onward; and the previously discussed test scores.

Because this record could support a finding that the individual administrators abrogated their child find duties, they cannot escape liability based on qualified immunity. Summary judgment on this ground, therefore, is denied.

IV.  *CONCLUSION*

The record demonstrates that plaintiffs have produced sufficient evidence to allow this case to proceed to trial. Accordingly, defendants' motion for summary judgment is denied.