**Elizabeth REGALBUTO and Lynne Oliveri, Individually in Her Own Right and as Administratrix of the Estate of Samuel R. Regalbuto**

v.

**CITY OF PHILADELPHIA; Philadelphia Police Department; Philadelphia Fire Department; John Doe Number One, Director of Department of Public Safety, Philadelphia County; John Doe Number Two, Director of Communications, Division of Emergency Dispatch, Department of Public Safety, Philadelphia County.**

Civil Action No. 95–5629.

United States District Court,
E.D. Pennsylvania.

Dec. 12, 1995.

Joseph M. Marrone, Jr., Camden, NJ, for Plaintiffs.

Marie C. Lasota, Leon A. King, II, City of Phila. Law Dept., Phila., PA, for Defendants.

## MEMORANDUM

PADOVA, District Judge.

## I. INTRODUCTION

This civil rights suit alleges that the City of Philadelphia's "911" service inadequately responded to calls for emergency aid made on behalf of decedent, Samuel Regalbuto (hereinafter "Decedent"). Plaintiffs, Decedent's wife and daughter, allege causes of action under 42 U.S.C.A. § 1983 (West 1994), the Pennsylvania Constitution, and state common law against: (1) the City of Philadelphia (hereinafter "the City"); (2) the Philadelphia Police and Fire Departments, which, Plaintiffs allege, implement and execute the 911 service; (3) "John Doe Number One," Director of the Department of Public Safety, Philadelphia County; and (4) "John Doe

Number Two," Director of Communications in the Division of Emergency Dispatch Services for the Department of Public Safety, Philadelphia County.

Currently before the Court is Defendants' Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c), asserting that Plaintiffs have failed to state a claim upon which relief can be granted. Defendants also move separately for the dismissal of the Philadelphia Police and Fire Departments. For the reasons discussed below, I will grant Defendants' motions.

## II. FACTUAL ALLEGATIONS AND COMPLAINT

Plaintiffs set forth the following factual allegations in their Complaint. On February 18, 1995 at about 8:40 PM, Decedent, who was attending a gathering at a Philadelphia residence, began having difficulty breathing and collapsed to the ground. An individual at the gathering promptly called "911" to request an ambulance. The 911 dispatcher told him that an ambulance would be sent immediately. In the twenty minutes that elapsed between this first call and the arrival of a fire engine and police car, two more calls were made to check on the ambulance's status; each time, the dispatcher assured the callers that an ambulance was en route.

When the fire engine and police car arrived on the scene, these personnel did not enter the house until several minutes later, despite being informed that Decedent was inside and in need of assistance. Upon entering the house, these personnel administered an I.V. and used a defibrillator. However, the defibrillator did not function properly. Approximately five minutes after the arrival of the fire engine and police car, an ambulance arrived and the ambulance personnel entered the residence to assist Decedent. At that point, Decedent was in full cardiac and respiratory arrest. The ambulance personnel administered emergency aid and transported Decedent to Nazareth Hospital, where he was pronounced dead at 9:35 PM.

Plaintiffs advance two theories of liability under 42 U.S.C.A. § 1983. First, Plaintiffs allege that Defendants maintained certain policies, practices and/or customs in reckless disregard or with deliberate indifference to Decedent's Fourteenth Amendment right to life, property, and due process. Specifically, Defendants did not implement adequate systems and databases, procedures, and supervision to ensure that personnel quickly and adequately responded to emergency calls. Plaintiffs further allege that although Defendants knew of the 911 system's numerous deficiencies, they continued to misrepresent the service's efficacy, causing Philadelphia County residents to call 911 and rely on its services instead of seeking alternative emergency aid that was available to them.

Second, Plaintiffs allege that Defendants breached their duty of care to Decedent and deprived him of his rights to substantive due process in violation of 42 U.S.C. § 1983. Defendants knew that Decedent and those acting on his behalf would rely on Defendants' representations about 911 services, including the dispatcher's assurances that an ambulance would arrive soon, and this reliance would preclude Decedent from contacting other sources of emergency aid. By their actions and misrepresentations, Defendants created a "special relationship" with Decedent, depriving him of his ability to obtain alternative emergency aid and placing him in danger. This special relationship imposed an affirmative duty on Defendants to provide Decedent with prompt and effective medical assistance.

Plaintiffs allege that these actions and misrepresentations also violated Decedent's right to life, property, and due process under the Pennsylvania Constitution. They seek compensatory damages, for medical, funeral, and estate expenses, lost earnings and benefits, and pain and suffering, damages for loss of companionship, punitive damages, and attorneys' fees.

## III. STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is assessed under the same standard as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Nelson v. ARA Food Service*, No. Civ.A. 94–4542, 1995 WL 303990, at *6 n. 13

(E.D.Pa. May 18, 1995) (citing *Constitution Bank v. DiMarco*, 815 F.Supp. 154, 157 (E.D.Pa.1993)). Therefore, in deciding a Rule 12(c) motion, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir.1993) (citation omitted). Under Rule 12(c), judgment will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Institute for Scientific Information, Inc. v. Gordon and Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir.) (citing *Jablonski v. Pan American World Airways*, 863 F.2d 289, 290–91 (3d Cir.1988)), *cert. denied*, 502 U.S. 909, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); *see also Travelers Indemnity Co. v. Stedman*, 895 F.Supp. 742, 745–46 (E.D.Pa.1995) (noting that a court may not grant judgment on the pleadings unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief) (citation omitted).

## IV. DISCUSSION

### A. Claims Against the Philadelphia Police and Fire Departments

■ Defendants correctly argue that as a matter of law, the suit must be dismissed against the Philadelphia Police and Fire Departments because they are not separate legal entities that can be sued. *See* 53 Purdon's Pa.Stat.Ann. § 16257 (West 1957)[1]; *Baldi v. Philadelphia*, 609 F.Supp. 162, 168 (E.D.Pa.1985) (holding that police department did not have separate corporate existence from city so as to permit it to be sued for civil rights violations); *Philadelphia v. Glim*, 149 Pa.Cmwlth. 491, 613 A.2d 613, 616 (1992) (holding that fire department may not be sued as if it were legal entity separate from city; all suits against any city department must be brought against the city itself, because departments do not have independent legal existence). Therefore, I dismiss the police and fire departments from the suit.

### B. 42 U.S.C.A. § 1983 Claim

■ Section § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of an State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1994). Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985) (plurality opinion) (citation omitted). Therefore, to establish their § 1983 claim, Plaintiffs must allege that Defendants, acting under color of state law, deprived Decedent of a right secured by the Constitution. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.) (citing *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993)), *cert. denied*, —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995).

In the instant case, Plaintiffs claim that Defendants deprived Decedent of his substantive due process rights, arguing two distinct theories of liability under § 1983. Defendants contend that under either theory, Plaintiffs' factual pleadings, which the Court must consider as true for purposes of this Rule 12(c) motion, do not establish a § 1983 cause of action. I consider each basis for liability in turn.

### 1. Municipal Policies, Practices, and Customs

■ A municipality can be sued directly under § 1983 where an action or conduct

---

1. The statute states in relevant part:
[N]o such department shall be taken to have ... a separate corporate existence, and hereafter all suits growing out of their transactions ... shall be in the name of the city of Philadelphia.
53 Purdon's Pa.Stat.Ann. § 16257 (West 1957).

taken pursuant to municipal policy or custom causes a constitutional injury. *Monell v. Dep't of Social Serv. of the City of New York,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). To maintain a § 1983 action against a municipality, a plaintiff must allege that municipal policymakers, acting with deliberate or reckless indifference, established and maintained a practice, policy or custom which deprived plaintiff of a constitutional right. *See Fagan v. City of Vineland,* 22 F.3d 1283, 1292, *reh'g,* 22 F.3d 1296 (*en banc*) (3d Cir.1994) (holding that city may be liable under § 1983 for deprivation of substantive due process rights for failing to train police officers in high-speed pursuit, when plaintiffs were injured in collision with car attempting to evade police); *Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 724–25 (3d Cir.1989) (holding that plaintiff, who was sexually assaulted by teacher, stated a claim under § 1983 against school district and its officials for violation of her substantive due process rights, by following a practice of not taking action upon allegations of sexual misconduct by teachers), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990).

In *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992), the Supreme Court made clear that "proper analysis requires [the court] to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if

so, whether the city is responsible for that violation." (citation omitted). The Court emphasized the separate character of these two inquiries, noting that not all municipal policies that cause harm are unconstitutional or actionable under § 1983. *Id.* at 122–23, 112 S.Ct. at 1067.

■ In this case, Defendants argue that Plaintiffs' pleadings do not meet the first prong of *Collins* because they fail to allege a specific constitutional right that Defendants violated through their actions or omissions.[2] I agree. In *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1149–50 (3d Cir.1995), the Third Circuit Court of Appeals reiterated the *Collins* standard that unless plaintiff first establishes that he or she has suffered a constitutional injury, it is irrelevant for purposes of § 1983 liability whether the city's policies, enacted with deliberate indifference, caused an injury. For example, in *Stoneking,* 882 F.2d at 725–27, in holding that the plaintiff could maintain her § 1983 action against a school district for its harm-causing policies, the court found that the plaintiff had a constitutional right to be free from sexual abuse by her teacher. The court reasoned that the right to be free from sexual molestation by a teacher was "closely analogous" to a student's right under the Due Process Clause to be free from corporal punishment; the Supreme Court recognized that right in *Ingraham v. Wright,* 430 U.S. 651, 673 & n. 41, 97 S.Ct. 1401, 1413 & n. 41, 51 L.Ed.2d 711 (1977). *Id.* at 726–27.

■ In the instant case, Plaintiffs acknowledge in their responsive papers that

---

**2.** In their moving papers, Defendants also argued that the City must be dismissed from this suit because Plaintiffs did not allege that any individual city employee caused constitutional injury to Decedent. Defendants asserted that the City could not be held liable in the absence of individual liability. (The Complaint did not name as defendants either the 911 dispatcher who handled the calls made on decedent's behalf, or the individual emergency personnel who arrived at the scene. Defendants also noted that the John Doe defendants have not been named or served with the Complaint.)

In *Fagan,* 22 F.3d at 1291–92, the United States Court of Appeals for the Third Circuit specifically addressed the question of whether municipal liability for deprivation of substantive due process rights is possible under § 1983 if no

individual municipal employee violates the Constitution. *Fagan* held that even if no individual employee committed a constitutional tort, a city can still be liable if its policymakers, acting with deliberate indifference, implemented and maintained a policy that caused the individual employee to deprive plaintiff of life or liberty. *Id.* at 1292.

At oral argument held on Defendants' motion on November 9, 1995, this Court asked the parties to submit supplemental briefs on *Fagan's* applicability to the instant case. Defendants' acknowledged *Fagan's* holding in their supplemental brief, but argued that Plaintiffs still could not maintain a § 1983 action against the city because they did not allege a constitutional injury.

the Due Process Clause does not impose an affirmative obligation on the state to provide the public with adequate emergency rescue services.[3] Plaintiffs instead argue that the City's practice of inadequately training and supervising emergency personnel, which caused delays in response times, was "conscience-shocking" in a constitutional sense, given that Defendants had notice of the deficiencies in the 911 service. The plaintiff in *Collins,* 503 U.S. at 117–18, 128, 112 S.Ct. at 1064, 1070, the widow of a city sanitation department employee who died of asphyxia after entering a manhole, similarly argued that a city's alleged failure to train or warn its employees about the dangers of such work, given notice of the risks, was so arbitrary as to be unconstitutional. The Supreme Court rejected this argument, *id.* at 128, 112 S.Ct. at 1070, and I find the *Collins* analysis directly applicable to the instant case. As in *Collins,* Plaintiffs' claim "is analogous to a fairly typical state law tort claim." *Id.* However, the Due Process Clause neither "impose[s] federal duties that are analogous to those traditionally imposed by state tort law," nor does it overturn "the presumption that the administration of Government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces." *Id.* (citations omitted). *See also Searles v. Southeastern Pa. Trans. Auth.,* 990 F.2d 789, 792–93 (3d Cir.1993) (applying *Collins* to hold that transit agency's allegedly negligent inspection and repair programs were not conscience-shocking in the constitutional sense).

The Court has cautioned against expanding the concept of substantive due process and advises judges to exercise "judicial self-restraint" when asked to "break new ground" in this field. *Id.* at 125, 112 S.Ct. at 1068 (citation omitted). Because Plaintiffs have not sufficiently demonstrated that the City's policies, practices, and customs caused a constitutional tort, I find that Plaintiffs have not pled a § 1983 cause of action under this theory of liability.

### 2. "Special Relationship"

 Plaintiffs present an alternative theory of liability under § 1983. Specifically, they argue that when the 911 dispatcher assured the callers that help was on the way, Defendants created a "special relationship" with Decedent such that Defendants had an affirmative duty to provide Decedent with prompt and adequate emergency care. *See DeShaney v. Winnebago County Dep't of Social Serv.,* 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989).

 The Due Process Clause is " 'a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security.' " *Collins,* 503 U.S. at 126, 112 S.Ct. at 1069 (citing *DeShaney,* 489 U.S. at 195, 109 S.Ct. at 1003). The Clause was designed to prevent government oppression and does not impose an affirmative duty on the state to protect its citizens. *Id.* (citing *DeShaney,* 489 U.S. at 196, 109 S.Ct. at 1003.) However, the Supreme Court has recognized that when the state takes individuals into custody, the state must affirmatively act to protect those individuals because they are no longer in a position to fend for themselves. *Id.* Thus, for example, the state has a duty to ensure the safety of involuntarily-committed mental patients. *Youngberg v. Romeo,* 457 U.S. 307, 314–25, 102 S.Ct. 2452, 2457–63, 73 L.Ed.2d 28 (1982). Similarly, the state must provide adequate medical care to inmates because their incarceration prevents them from seeking care on their own. *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976).

Plaintiffs claim that the instant case falls within the "special relationship" exception, arguing that Decedent was deprived of his ability to seek alternative sources of aid because the dispatcher repeatedly assured the callers that help was on the way. This argument is untenable. The cases in which the Supreme Court has found a "special relationship" make clear that in order for this exception to apply, the state must affirmatively act

---

**3.** Although courts in this circuit have not directly addressed the issue, at least one other circuit has found that the Constitution does not require a state to provide effective emergency rescue ser-

vices. *See Archie v. City of Racine,* 847 F.2d 1211, 1220–21 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989).

to curtail the individual's freedom such that he or she can no longer care for him or herself. *See Youngberg,* 457 U.S. at 315–16, 102 S.Ct. at 2457–58; *Estelle,* 429 U.S. at 103–04, 97 S.Ct. at 290–91. Plaintiffs have not alleged facts demonstrating that the state exercised sufficient restraint over Decedent to deprive him of his ability to act on his own behalf, thereby assuming an affirmative duty to provide Decedent with adequate emergency services. *See also Jackson v. Byrne,* 738 F.2d 1443, 1447 (7th Cir.1984) (holding that city did not create special, custodial relationship when it established itself as provider of fire protection, and therefore the city did not have an affirmative duty to act).

Because I find that Plaintiffs' pleadings have failed to state a § 1983 cause of action under either theory of liability, I grant Defendants' Motion for Judgment on the Pleadings with respect to the § 1983 claim.

## C. State Law Claims

Defendants' moving papers do not address Plaintiffs' claims under the Pennsylvania Constitution and state common law. Plaintiffs in this case may very well have meritorious state law claims. However, because I have dismissed Plaintiffs' § 1983 claim and, consequently, decline to exercise supplemental jurisdiction over the state law claims 28 U.S.C.A. 1367(c)(3) [4] (West 1993), I do not reach the merits of those claims. *See also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## V. CONCLUSION

For the above-mentioned reasons, Defendants' motions to dismiss the Philadelphia Police and Fire Departments and for Judgment on the Pleadings with respect to the

4. The statute provides in pertinent part:
 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

§ 1983 claim are granted, and Plaintiffs' state law claims are dismissed.

An appropriate Order follows.

## ORDER

AND NOW, this 11th day of December, 1995, upon consideration of Defendants' Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) (document no. 6), Plaintiffs' response thereto (document no. 7), and the parties' supplemental briefs (document nos. 10 and 11), and after oral argument held before this Court on November 9, 1995, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion is GRANTED;
2. Plaintiffs' state law claims are DISMISSED; and
3. The Clerk of the Court shall mark this case CLOSED.

(3) the district court has dismissed all claims over which it has original jurisdiction. . . .
28 U.S.C.A. § 1367(c)(3) (West 1993).