**Hattie HANSBERRY, et al., Plaintiff,**

v.

**CITY OF PHILADELPHIA, et al., Defendant.**

**No. 01–CV–1670.**

United States District Court, E.D. Pennsylvania.

Oct. 22, 2002.

Richard G. Freeman, Philadelphia, PA, for plaintiffs.

Jeffrey M. Scott, City of Philadelphia Law Dept., Philadelphia, PA, for defendants.

## EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

On July 12, 2001, plaintiffs Hattie and Raleigh Hansberry, co-administrators of the estate of their son Raymond, filed an amended complaint against the City of Philadelphia ("the City"), Police Lieutenant Stacey Herring, Police Officer Thomas Hood, and Police Officer William Schneider. Plaintiffs' suit stems from the unfortunate events of April 8, 1999, when a third party fatally shot their son. They claim that the police officers who responded to the shooting increased Raymond's risk of dying by bringing him to the hospital in a police wagon rather than waiting for an ambulance. Their complaint also asserts that the officers' misconduct resulted from the City's policy of failing to train its employees properly. Based on these allegations, Plaintiffs claim that the defendants denied their son substantive due process in violation of the Fourteenth Amendment. Plaintiffs have also filed state law claims for wrongful death and survival.

On March 19, 2002, defendants filed a motion pursuant to both my Directive for Accelerated Judgment and Rule 56 of the Federal Rules of Civil Procedure. This Directive allows the defendant to move for summary judgment by stating the issue or issues upon which the plaintiff's complaint rests and by then identifying those issues for which defendant believes there is no legal or evidentiary basis. In response to such a motion, as with summary judgment, a plaintiff must then state those claims that are still in controversy and document the evidentiary basis upon which a claim is being made. As plaintiffs have failed to raise or discuss their state law claims in their response to defendants' motion, I will consider those complaints withdrawn. Accordingly, the sole matter before me is whether there exists a legally sufficient

evidentiary basis for plaintiffs' claim that defendants deprived Raymond Hansberry of his substantive due process rights. For the reasons discussed below, I find that there is insufficient evidence to support this claim and I will therefore grant defendants' motion for summary judgment.

**Facts of the Case**

On April 8, 1999, at 5:26:43 p.m., the Philadelphia Police 911 service received a call of a person with a gun at the corner of 30th Street and Ridge Avenue in Philadelphia, PA. At 5:28:04 p.m., police radio reported a call of a shooting at this intersection and dispatched officers to the scene of the crime. While monitoring police radio in his patrol car, defendant Lt. Herring heard the dispatcher send a fire rescue vehicle to the crime scene as well. Lt. Herring then drove to 30th Street and Ridge Avenue. After finding no one there, he spotted a crowd a few blocks away at 30th and Norris Streets. Approaching the crowd, Lt. Herring discovered Raymond lying on his back. When the Lieutenant reached Raymond, he found him breathing but unresponsive. An onlooker reported that Raymond had lost consciousness shortly before the police arrived. Because there was no ambulance and Raymond was in critical condition, Lt. Herring summoned an emergency police wagon.

Lt. Herring's co-defendants, Officers Hood and Schneider, responded to his call. At approximately 5:35 p.m. they arrived at 30th and Norris Streets in an emergency patrol wagon. As the fire rescue vehicle had still not come and Raymond remained unresponsive and in need of medical attention, Lt. Herring directed the officers to place Raymond on a stretcher, put him in the back of their patrol wagon, and take him to the nearest trauma center, MCP Hospital. Raymond and a friend, driven by Officers Hood and Schneider, arrived at MCP Hospital at approximately 5:37 p.m.

The treating physician pronounced Raymond dead at 6:13 p.m.

**Standard of Review**

The standard of review for a summary judgment motion is the same as one for accelerated judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has filed a motion for summary judgment or accelerated judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.,* but must "support its response with affidavits, depositions, answers to interrogatories, or admissions on file." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990). The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

**Discussion**

Plaintiffs bring two claims. First, they assert that their son's death was the "direct and proximate result" of the actions of Lt. Herring, Officer Hood, and Officer

Schneider. Am. Compl., ¶ 33. Second, they claim that the police officers' actions resulted from the City's policy of failing "to discipline, train, or otherwise direct police officers concerning the rights of citizens to be secure and safe and receive adequate medical treatment after a shooting." Am. Compl., ¶ 35. Plaintiffs maintain that the City failed to train its officers properly and that, as a result, the individual defendants mistreated Raymond and thereby caused his death. In so doing, defendants allegedly deprived Raymond of his 14th Amendment right to substantive due process. Am. Compl., ¶ 31. As the executors of their son's estate, plaintiffs now bring suit pursuant to 42 U.S.C. § 1983. Section 1983 provides that persons acting under color of state law can be found liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.A. § 1983.

In general, state actors do not have an affirmative obligation to protect citizens from private violence. The Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Soc. Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). For this reason, individuals usually have no right to "governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196, 109 S.Ct. 998. Applying *DeShaney* "in the context of emergency services, state and federal courts have consistently held that the provision by the state of inadequate or incompetent emergency services does not rise to the level of a constitutional violation." *Huston v. Montgomery County*, No. Civ. 95–4209, 1995 WL 766308, at *3 (E.D.Pa.,1995). *See also, Regalbuto v. City of Philadel-*

*phia*, 937 F.Supp. 374, 379 (E.D.Pa.1995) ("[T]he Due Process Clause does not impose an affirmative obligation on the state to provide the public with adequate emergency rescue services."), *aff'd*, 91 F.3d 125 (3d Cir.1996).

■ There are, however, two exceptions to the presumption against state responsibility for the acts of private tortfeasors: (i) cases where there exists a "special relationship" between the individual and the state, such that the state has a duty to protect the health and safety of the individual, *see DeShaney*, 489 U.S. at 197–201, 109 S.Ct. 998; and (ii) cases where a "state-created danger" causes harm to an individual. *See Nicini v. Morra*, 212 F.3d 798, 807 n. 6 (3d Cir.2000) (en banc); *Kneipp v. Tedder*, 95 F.3d 1199, 1204–5 (3d Cir.1996). The plaintiffs allege that Lt. Herring and Officers Schneider and Hood, acting in their capacity as state agents, created the dangerous condition that deprived Raymond of his life. Pl.'s Resp., ¶ 1. I will address the question of whether plaintiffs have presented legally sufficient evidence that defendants, through the actions of the individual officers, created a dangerous condition that led to Raymond's death. I will then decide whether the individual defendants are immune from liability under the doctrine of qualified immunity and whether there is sufficient evidence that the City had a policy, practice, or training program that caused Raymond to be deprived of his 14th Amendment rights.

### A. Plaintiffs' Claim Against the Individual Officers

■ The initial issue before me is whether the individual officers, acting under color of state law, deprived Raymond of a constitutional or statutory right. *See* 42 U.S.C.A. § 1983. Plaintiffs maintain

that by creating a danger that would have otherwise not occurred the officers violated Raymond's 14th Amendment right to substantive due process. In *Kneipp,* and again in *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 908 (3d Cir.1997), the Third Circuit identified four prerequisites that a plaintiff must satisfy in order to prevail on the state-created danger theory: (i) the harm ultimately caused was foreseeable and fairly direct; (ii) the state actors acted in willful disregard for the safety of plaintiff; (iii) there existed some relationship between the state and the plaintiff; and (iv) the state actors used their authority to create an opportunity that otherwise would not have existed for the harm to occur. *Kneipp,* 95 F.3d at 1208 (quoting *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1152 (3d Cir.1995)). I find that plaintiffs have failed to present sufficient evidence to demonstrate the existence of a state-created danger.

### 1. *Foreseeable and Fairly Direct Harm*

The first element of the *Kneipp* test requires that the harm ultimately caused be a foreseeable and fairly direct result of the state's actions. In response to this requirement, the plaintiffs allege that the conduct of the individual police officers "caused" Raymond's death. Pl.'s Resp., ¶ 7. To support their claim, plaintiffs cite Lt. Herring's decision not to wait for an emergency medical crew, the lack of emergency medical equipment in Officers Schneider and Hood's emergency patrol wagon, and the two officers absence from the back seat of the wagon during the drive to the hospital. Pl.'s Resp., ¶¶ 2, 3. In addition, their expert criticizes Lt. Herring's decision not to administer CPR to Raymond. Pl.Ex. D, ¶ 3.

Plaintiffs, however, do not even suggest how these alleged misdeeds caused plaintiffs' death. Instead, their claims are inconsistent and unsupported. For example, in addition to faulting Lt. Herring for not waiting for an ambulance, plaintiffs also criticize him for not transporting Raymond to the hospital sooner in the back of a patrol car. Pl.'s Resp., ¶ 4. And while plaintiffs vaguely suggest that the officers' absence from Raymond's side during the trip to the hospital heightened his risk of dying, they neither specify what factors gave rise to these risks nor indicate how the officers' presence would have differed from that of the friend who did ride beside Raymond. Pl.'s Resp., ¶ 3. Finally, Plaintiffs' expert, Dr. William Land, states that the defendants were "indifferent" to Raymond's plight because they did not contact emergency medical services sooner. Pl. Ex. D, ¶ 3. This assertion does no more than suggest Dr. Land's familiarity with the applicable legal jargon, as there is no factual support in the record for his charge: Lt. Herring testified without contradiction that 911 emergency services dispatched an emergency medical services team prior to his arrival at 30th and Norris Streets. Herring Dep, at 10. Dr. Land's assertion that Raymond might have survived if an ambulance had been summoned lacks factual a basis in the record. Lt. Herring summoned emergency help and nothing supports the statement that the call was not made expeditiously. The plaintiffs have offered no reliable evidence for why or how Raymond's death was a foreseeable and/or direct result of defendants' actions.

These determinations are consistent with Third Circuit law. Plaintiffs have not disputed that the direct cause of Raymond's death was a bullet wound from a shot fired by a private citizen. Similar to the plaintiffs in *Morse,* Raymond's parents instead maintain that state actors might have done something to foresee and therefore avert Raymond's death. Am. Compl.

¶¶ 23, 29, 33; *see Morse,* 132 F.3d at 908–9. In *Morse,* the assailant, Trudy Stovall, entered the school building where Diane Morse taught and shot her. The Third Circuit rejected plaintiffs' argument that but for the school's decision to permit the back doors to be propped open Stovall would not have entered the building and Morse would not have died. "Plaintiff can prove no set of facts which will provide the direct causal connection between Stovall's deadly attack and any of defendants' allegedly improper acts." *Id.* at 909. As plaintiffs have also not presented any facts for why Raymond's death was a foreseeable or fairly direct result of the officers' actions, I hold that they have not satisfied the first element of the *Kneipp* test.

### 2. *Mens Rea*

■ The second factor required by *Kneipp* is evidence that the state actor acted with willful disregard for or deliberate indifference to the safety of the plaintiff. *Morse,* 132 F.3d at 910. To make out a claim for deliberate indifference a plaintiff must show that the state action "shocks the conscience." *Miller v. City of Philadelphia,* 174 F.3d 368, 375 (3d Cir. 1999) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Determinations of what shocks the conscience are made on a case-by-case basis. In *Lewis,* the Supreme Court held that courts must take note of a "culpability spectrum" when considering alleged deprivations of substantive due process by state actors. *Lewis,* 523 U.S. at 849, 118 S.Ct. 1708. To determine whether the state actor violated a plaintiff's due process rights, a judge must examine the circumstances in which an alleged constitutional violation occurred because "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another. . . ." *Id.* at 850, 118 S.Ct. 1708. It is under this standard that I must consider whether there is evidence that the individual defendants acted with willful disregard for the safety of Raymond Hansberry.

The facts of a case similar to plaintiffs' suggest that plaintiffs have failed to present sufficient evidence of willful disregard or deliberate indifference. The police officers in this case confronted a situation akin to that addressed in *Cannon v. City of Philadelphia,* 86 F.Supp.2d 460 (E.D.Pa. 2000), *aff'd,* 261 F.3d 490 (3d Cir.2001). In *Cannon,* "the officers were attempting to apprehend a suspect and secure a crime scene and at the same time address the plaintiff's request for transportation to the hospital." *Id.* at 471. Like Raymond, plaintiff Joanne Cannon had also experienced a life-threatening injury, namely a heart-attack. *Id.* at 464. In *Cannon,* however, the police officers *failed* to transport the plaintiff to the hospital. *Id.* Nonetheless, citing the "relative chaos" within which the defendants were working, the court held that under the context-specific inquiry required by *Lewis* and *Miller* nothing conscience shocking had occurred. *Id.*

Plaintiffs' allegations are legally indistinguishable from the failure to rescue claim rejected in *Cannon.* Like Joanne Cannon, plaintiffs have failed to present any evidence of conscience-shocking behavior. Instead, the uncontested deposition transcripts of the defendants show the officers' concern for Raymond's well-being: when asked for details of conversations taking place around him, Officer Hood testified that "My partner and I were just concentrating on getting this male onto the stretcher[,] into the back of the wagon and to the hospital. That was our main concern at the time." Hood Dep., at 30. In light of this testimony and the absence of any evidence of police action "that is so ill-conceived or malicious that it shocks the

conscience," *Nicini,* 212 F.3d at 810 (citations omitted), I cannot find that plaintiffs offered sufficient evidence to satisfy the second prong of *Kneipp.*

### 3. Foreseeable Plaintiff

The third element required by *Kneipp* is that the plaintiff be foreseeable. The Third Circuit, when interpreting this prong of the state-created danger theory, has found liability in cases "where the state acted in such a way as to leave a 'discrete plaintiff vulnerable to a foreseeable injury.'" *Morse,* 132 F.3d at 912 (quoting *Kneipp,* 95 F.3d at 1209). Plaintiffs seem to argue that, had the police not taken Raymond into custody, an emergency medical services crew might have arrived and somehow succeeded where the doctors at MCP Hospital failed. They have not, however, substantiated this argument with any evidence of the frustrated arrival of a rescue crew or the superior life-saving potential of an emergency medical services team.[1] Absent such testimony, a reasonable jury could not find that the state left Raymond vulnerable to foreseeable injury. Because plaintiffs present no evidence that Raymond's death was a foreseeable consequence of defendants' decisions about whether and how to protect Raymond's life, I find that Hattie and Raleigh Hansberry are not foreseeable plaintiffs.

### 4. Creating an Opportunity for Harm

The fourth element of the *Kneipp* test is whether "the state actors used their au-thority to create an opportunity that otherwise would not have existed for the third party's crime to occur." *Kneipp,* 95 F.3d at 1208 (quoting *Mark,* 51 F.3d at 1141). Plaintiffs allege that defendants created an opportunity for harm by transporting Raymond away from 30th and Norris Streets, suggesting that this act fatally denied Raymond access to the ambulance that eventually arrived. As stated earlier, however, the record shows that the ambulance arrived *after* Raymond had already reached the hospital. Plaintiffs have not suggested why an ambulance crew might have done a better job of saving Raymond's life than the staff of MCP Hospital. Without any such evidence the plaintiffs cannot raise a material issue as to whether the defendants caused Raymond's death. When the police arrived, Raymond was lying unresponsive on the ground, with blood flowing from his mouth. He had been shot at five times. Pl.'s Ex. C, at 2. Plaintiffs have not presented any evidence of how the police created an opportunity for harm separate and apart from the deplorable acts of Raymond's assailant. They therefore cannot satisfy the fourth prong of the *Kneipp* test.

Plaintiffs have failed to present evidence of a state-created danger. Therefore, under *DeShaney* and its progeny, which deny plaintiffs a generalized right to life-saving aid, no violation of Raymond's constitutional rights could, as a matter of law, have occurred.

---

1. The record suggests that no emergency medical services vehicle arrived prior to Officers Hood and Schneider's departure from 30th and Norris Streets: Plaintiffs' witness Michael Maynard reported that the officers left before the ambulance arrived. Pl.'s Ex. A, at 2. According to Maynard, there was at least five minutes in between when the officers left the crime scene and when the ambulance came. *Id.* The Computer Aided Dis-patch log submitted by defendants shows that it took approximately two minutes for Raymond to reach MCP Hospital from 30th and Norris Streets. The record therefore shows that the defendants secured emergency medical treatment for Raymond at least three minutes sooner than they would have if they had waited for an ambulance. Such facts undermine Plaintiffs' complaint that defendants either caused or expedited Raymond's death.

*A. Defendants' Claims of Qualified Immunity*

■ Defendants assert that plaintiffs' claims against the individual officers are barred by the doctrine of qualified immunity. The Supreme Court recently held that "[i]n a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in a proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Interpreting this decision, the Third Circuit has held that:

"After *Saucier* it is clear that claims of qualified immunity are to be evaluated using a two-step process. First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity."

*Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.2002). As stated above, I find that plaintiffs failed to produce evidence of a constitutional violation under either *Kneipp* or *DeShaney*. *Bennett* therefore dictates that the officers are entitled to immunity. *See id.*

*B. Plaintiffs' Claim against the City of Philadelphia*

Plaintiffs second claim is against the City. They allege that: (i) a City policy or custom deprived Raymond of his constitutional rights, and (ii) the City is liable for its failure to train its police officers adequately.

■ *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), established that a local government can be found liable for an injurious municipal policy or custom. In *Monell* the Supreme Court held that:

[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. 2018. Thus, local government bodies may be held liable if a state actor acts unconstitutionally pursuant to a government policy or custom.[2] *See Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Plaintiffs do not, however, have to demonstrate unconstitutional actions by Lt. Herring or Officers Schneider and Hood to make our their claim under § 1983. The Third Circuit has held that plaintiffs can establish liability based solely on a municipal policy or custom if the plaintiffs have both connected the policy to a constitutional injury and "adduced evidence of scienter on the part of a municipal actor [with] final policymaking authority in the areas in question." *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1062 (3d Cir.1991).

■ Plaintiffs cannot establish municipal liability based on *Monell* for two rea-

---

**2.** The Third Circuit has defined both "policy" and "custom" in this regard. A policy occurs when "a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (citations omitted)). A custom is defined as "such practices of state officials so permanent and well-settled as to virtually constitute law." *Id.*

sons. First, they cannot demonstrate that a municipal policy or custom, as carried out by the individual defendants, inflicted an unconstitutional injury because they have presented no evidence that the officers violated Raymond's 14th Amendment rights. Second, were they to argue under *Simmons* that a municipal policy by itself deprived Raymond of his substantive due process rights, they would have needed to present evidence of a constitutional violation, a particular policy, and an identifiable policymaker. *See Simmons,* 947 F.2d at 1062. They have presented no such evidence. Consequently, they cannot satisfy the requirements of *Monell. See Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

█ As plaintiffs' complaint suggests, a municipality may also be liable under § 1983 if it failed to train its employees properly and that failure caused the underlying constitutional violation. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Canton,* the Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197. The Court also held that the plaintiffs must prove that the "deficiency in training actually caused the police officers' indifference to the [the individual's] medical needs." *Id.* at 391, 109 S.Ct. 1197.

█ Plaintiffs cannot demonstrate that the City's failure to train its police officers caused Raymond's constitutional rights to be violated. As discussed earlier, plaintiffs have presented no evidence of defendants' conduct that might either shock the conscience or manifest a deliberate indifference to Raymond's welfare, thus there is no underlying constitutional violation. Nor have plaintiffs made reference to any police department directives or training programs. They have instead relied on the conclusory statements of their expert Dr. Land that Lt. Hansberry should have performed CPR on their still-breathing son. Pl.'s Resp., ¶ 11. Even assuming that Lt. Herring erred by choosing not to perform CPR and that this error caused Raymond's death, the fact that an individual officer may be poorly trained does not suffice to make the city liable. Such an argument falls short of legal sufficiency because the officer's shortcomings could have resulted from factors other than faulty training. *See Canton,* 489 U.S. at 391, 109 S.Ct. 1197. For liability to attach, the plaintiffs must both identify a deficiency in the City's training program and show that the deficiency caused the injury. *Id.* Plaintiffs have done neither. I therefore find that plaintiffs have failed to raise a genuine issue as to whether the City failed to train its officers in the proper handling of emergency medical decisions.

**Conclusion**

For the foregoing reasons, I grant Defendants' Motion for Summary Judgment.

*ORDER*

**AND NOW,** this day of October, 2002, upon review of the filings of the parties, it is **ORDERED** that:

(1) Defendant's Motion for Accelerated Judgment Pursuant to the Brody Directive and Rule 56 of the Federal Rules of Civil Procedure (Docket Entry # 12) is **GRANTED.**