John Gill SMITH and the United
States of America

v.

The CITY OF PHILADELPHIA

No. Civ.A. 03–6494.

United States District Court,
E.D. Pennsylvania.

Nov. 12, 2004.

**484**

Ronda Goldfein, AIDS Law Project of PA, Philadelphia, PA, for Plaintiff.

Kathleen P. Wolfe, Laura F. Einstein, U.S. Dept. of Justice, Washington, DC, for Intervenor Plaintiff.

Lynne A. Sitarski, City of Phila. Law Dept., Deputy City Solicitor, Philadelphia, PA, for Defendant.

### MEMORANDUM

O'NEILL, District Judge.

## I. INTRODUCTION

Plaintiff John Gill Smith instituted this action on December 1, 2003 against defendant City of Philadelphia alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12132, the Rehabilitation act of 1973, 29 U.S.C. § 749, the Pennsylvania Human Relations Act, 43 P.S. §§ 951–963 and the Human Relations Fair Practices Ordinance, Philadelphia Code § 9–1105, *et seq.* Smith asserts that Philadelphia paramedics failed to provide appropriate care to him because he is HIV positive. On September 16, 2004, I granted plaintiff United States' motion to intervene in the instant matter. Before me now is defendant's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons stated below I will grant defendant's motion as to Smith's federal claims and will deny defendant's motion in all other respects.

## II. BACKGROUND

On February 20, 2001, Smith, who is HIV positive and suffers from AIDS, believed he was having a heart attack. His domestic partner called 911 and two emergency medical technicians (EMTs) responded to the call. Upon their arrival, the EMTs, Katherine Ceschan and Joanie Kounen, were informed that Smith had AIDS. Smith asserts that upon learning that he had AIDS the EMTs refused to provide him with medical assessment or treatment. He alleges that he was forced to exit his home and board the ambulance without the EMTs' assistance. Smith asserts he was told to sit next to the back door of the ambulance as far away as possible from the EMT riding in the rear of the ambulance. The EMT allegedly told Smith "If you cough on me, I can press charges against you." Smith alleges that he was obviously suffering upon his arrival at Frankford Hospital but the EMTs refused to touch him and ordered him to exit the ambulance and walk to a wheelchair on his own. Due to a lengthy wait for treatment at Frankford, Smith ultimately left to undergo further testing

at Hahnemann Hospital. At Hahnemann, Smith was diagnosed with having a torn chest muscle, rather than a heart attack.

Smith alleges the actions of the EMTs caused him to suffer emotional distress, embarrassment, humiliation, loss of self-esteem, loss of life's pleasures and that he has incurred economic injury and pain and suffering. He further alleges that defendants actions were part of a continuing pattern and practice of discrimination by Philadelphia Emergency Medical Services (EMS). Smith notes that in March 1994, the City entered into a settlement agreement with the United States Department of Justice to settle similar discrimination charges raised by a person with HIV/AIDS who had been discriminated against by EMS employees.

On August 20, 2001, Smith filed a complaint with the Pennsylvania Human Relations Commission (PHRC). Smith alleges he provided requested information and documents and attended meetings and a fact-finding conference regarding his claims. He further alleges that defendant intentionally delayed the administrative process by refusing to produce requested documents. As a result of defendant's alleged bad faith and PHRC's failure to reach a resolution of his complaint, Smith filed this suit.

## III. STANDARD FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is treated using the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Regalbuto v. City of Philadelphia*, 937 F.Supp. 374, 376–77 (E.D.Pa.1995). In deciding a rule 12(c) motion, I must therefore view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-

moving party. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir.1993) (citation omitted). Judgment will be granted under Rule 12(c) only "if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law." *Institute for Scientific Information, Inc. v. Gordon and Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir.1991), *citing Jablonski v. Pan American World Airways*, 863 F.2d 289, 290–91 (3d Cir.1988). *See also Travelers Indemnity Co. v. Stedman*, 895 F.Supp. 742, 745–46 (E.D.Pa.1995) (noting that a court may not grant judgment on the pleadings unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief) (citation omitted).

## IV. DISCUSSION

### A. Smith's Federal Claims and the Statute of Limitations

 Smith's federal claims are barred by the statute of limitations. Claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act of 1973, 29 U.S.C. § 749, are governed by the state statute of limitations for personal injury claims. *Freed v. Consolidated Rail Corp.*, 201 F.3d 188 (3d Cir.2000); *Saylor v. Ridge*, 989 F.Supp. 680, 685–86 (E.D.Pa.1998); *McMenamin v. City of Phila.*, No. 99–5156, 2000 WL 873321 at *2 (E.D.Pa. June 14, 2000). In Pennsylvania, a plaintiff must bring a cause of action within two years of the injury giving rise to the alleged violations. 42 Pa. Cons.Stat. Ann. § 5524. The date of accrual of a federal claim is the date "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Toney v. U.S. Healthcare, Inc.*, 840 F.Supp. 357, 359 (E.D.Pa.1993) (citation omitted). In Smith's case, the date of

accrual is February 20, 2001, the date of the alleged discriminatory actions. Smith filed his complaint more than two years later on December 1, 2003. Unless Smith can establish that the statute of limitations was tolled while he pursued his administrative remedies with the PHRC, his claim is time barred.

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." *Oshiver v. Levin*, 38 F.3d 1380, 1387 (3d Cir.1994). Equitable tolling is appropriate "only when the 'principles of equity would make the rigid application of a limitation period unfair.'" *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir.1999). "Although the Pennsylvania statute of limitation is applied to the federal claims, federal tolling doctrine may be applicable to determine whether … federal claims are timely." *Lake v. Arnold*, 232 F.3d 360, 366 (3d Cir.2000). The federal equitable tolling doctrine holds that tolling of the statute of limitations is appropriate in three circumstances: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver*, 38 F.3d at 1387. *See also Lake*, 232 F.3d at 370 n. 9. None of these circumstances is present here.

■ Smith asserts that equitable tolling is appropriate here because he asserted his claims in a timely fashion in the wrong forum. The "wrong forum" argument is inapplicable here however. Smith's PHRC complaint was not filed in the "wrong" forum. "The PHRC had jurisdiction and venue to hear [plaintiff's] claim. It had the power to grant him relief." *Estrada v. Trager*, No. 01–4669, 2002 WL 31053819 at *6, 2002 U.S. Dist. LEXIS 17432 at *20 (E.D.Pa. Sept. 11, 2002).

Smith was not actively misled by defendant regarding his cause of action and makes no allegations which would support such a finding.

■ Finally, Smith was not prevented from asserting his rights in some extraordinary way. He could have raised his federal claims prior to the expiration of the limitations period without prejudicing his state claims. Neither Title II of the ADA nor the Rehabilitation Act include a requirement that a plaintiff exhaust his or her administrative remedies before filing suit in federal court.[1] *See Freed v. Consolidated Rail Corp.*, 201 F.3d 188, 190 (3d Cir.2000) ("section 504 plaintiffs may proceed directly to court without pursuing administrative remedies"); *Saylor v. Ridge*, 989 F.Supp. 680, 685–686 (E.D.Pa. 1998) ("there is no requirement that administrative remedies first be exhausted before suit may be commenced"). The regulations to Title II note that "[b]ecause the act does not require exhaustion of administrative remedies, *the complainant may elect to proceed with a private suit at any time.*" 28 C.F.R. § 35.172, Apx. A

---

1. Smith cites *Jeremy H. v. Mount Lebanon School District*, 95 F.3d 272, 281 (3d Cir. 1996), to support the proposition that the Court of Appeals has held that plaintiffs bringing discrimination claims under Section 504 must first exhaust their administrative remedies. However, in *Jeremy H*, the Court held that "[t]he provisions of the Rehabilitation Act and of the ADA invoked by the [plaintiffs] are not, by the terms of those two statutes, subject to any exhaustion requirements." *Id*. The Court distinguished the one Section 504 case where the Court had previously applied an exhaustion requirement as involving "very unusual circumstances." *Id*. Smith notes no such unusual circumstances in this case.

(emphasis added). *See also Bechtel v. East Penn Sch. Dist. of Lehigh Cty. Pa.,* No. 93–T–754–5, 1994 WL 3396 (E.D.Pa. Jan. 4, 1994) ("The DOJ regulations specifically provide that although federal agencies are available to hear claims under Title II of the ADA, plaintiffs are not required to file with the agencies prior to filing in federal court."); *Roe v. Cty. Comm. of Monongalia Cty.,* 926 F.Supp. 74, 77 (N.D.W.Va.1996); *Dertz. v. City of Chicago,* 912 F.Supp. 319, 324 (N.D.Ill. 1995); *Finley v. Giacobbe,* 827 F.Supp. 215, 219 (S.D.N.Y.1993). There is "no requirement that plaintiffs file an administrative complaint or otherwise follow the procedural requirements of Title I when filing a Title II claim." *Wagner v. Texas A & M Univ.,* 939 F.Supp. 1297, 1309 (S.D.Tex.1996).

■ Smith argues that the Pennsylvania Human Relations Act (PHRA) required that his state law claims be brought first to the PHRC. In *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917, 920 (1989), the Pennsylvania Supreme Court held that the legislature's use "of the word 'shall' as opposed to 'may' [in 43 Pa.C.S.A. Section 953], expresses an intent to make administrative procedures under the PHRA a mandatory rather than discretionary means of enforcing the right created thereby." Under *Clay* and Section 953, Smith was therefore required to file his state discrimination claims with the PHRC before raising them in this federal lawsuit. Without more, however, the PHRC filing requirement is not sufficient to toll the statute of limitations for Smith's federal claims.

Section 926(c) of the PHRA provides "that the rights of a complainant thereunder shall not be foreclosed from being pursued in the courts if, within one year after the filing of a complaint, the PHRC dismisses the complaint or fails to enter a conciliation agreement to which the complainant is a party." *Clay,* 559 A.2d at 920, *citing* 43 Pa.C.S.A. § 962(c). Because no resolution had been reached with respect to his claims before the PHRC, Smith could have filed a suit addressing both his state and federal claims at any time after August 20, 2002, one year after the filing of his PHRC complaint. Instead, Smith waited until December 1, 2003 before filing this lawsuit "knowing that dismissal for such tardiness was at least possible if not probable or certain. In such circumstances ... equitable relief is unwarranted." *Donovan v. Henderson,* 45 Fed.Appx. 178, 180–81, 2002 WL 2004316, *2 (3d Cir.2002). Smith had a seven month window of opportunity for filing his lawsuit during which he would have met the procedural requirements for his state claims under the PHRA and the statute of limitations for his ADA and Rehabilitation Act claims. The PHRA filing requirement did not interfere with the timely filing of his PHRA claims.

Further, Smith did not have to abandon the PHRC process entirely when he raised his federal claims. In *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court addressed the argument that failure to toll the statute of limitations on a Section 1981 claim during the pendency of an EEOC complaint would interfere with the administrative process. The Court noted "[o]ne answer to this, although perhaps not a highly satisfactory one, is that the plaintiff in his § 1981 suit may ask the court to stay proceedings until the administrative efforts at conciliation and voluntary compliance have been completed." *Id.* Smith could have requested such a stay had he wished to allow the PHRC proceedings to reach their conclusion while preserving his federal claims.

In *Burkhart v. Widener University*, 70 Fed.Appx. 52, 54–55, 2003 WL 21466774 at *3 (3d Cir.2003), the Court of Appeals held that "[b]ecause Title III [of the ADA] does not require the exhaustion of state remedies, the fact that [plaintiff] pursued a claim before the PHRC does not toll the statute of limitations."[2] In *Burkhart*, the Court failed to cite any authority in support of this proposition; however several other courts have held that equitable tolling is not appropriate where resort to an agency is not a prerequisite to review in federal court.

In *Glass Molders, Pottery, Plastics & Allied Workers International Union (AFL–CIO, CLC) Local 421 v. A–CMI Michigan Casting Center*, 191 F.3d 764, 769–70 (6th Cir.1999), the Court held that the plaintiff labor union's action was time-barred and the statute of limitations for their claim was not tolled because the claim could have been heard concurrently with proceedings before the National Labor Relations Board. The Court noted that "[a]lthough the Board's determination would trump a contrary arbitration award, the company's filing of a charge with the NLRB in no way prevented the union from filing an action under section 301; the two actions are simply parallel avenues of relief." *See also Arriaga–Zayas v. International Ladies' Garment Workers' Union*, 835 F.2d 11, 14 (1st Cir.1987) ("The Court ... has historically been reluctant to invoke tolling in circumstances where a claimant rides parallel horses in search of relief.").

In *Higgins v. New York Stock Exchange*, 942 F.2d 829, 833–34 (2d Cir.1991), the Court of Appeals for the Second Circuit held that equitable tolling could not be used to exclude time an antitrust plaintiff chose to spend pursuing his claims before the Securities and Exchange Commission before filing a federal claim. The Court wrote that to allow parties to " 'toll' the limitations period at their own option by instituting administrative proceedings ... would greatly prolong and delay litigation without any corresponding benefit. It would, moreover, create unnecessary and undesirable opportunities for the endless harassment of parties through serial litigation." *Id.* at 834.

In *Conley v. International Brotherhood of Electrical Workers, Local 639*, 810 F.2d 913, 915–16 (9th Cir.1987), the Court of Appeals for the Ninth Circuit held that "[e]quitable tolling is most appropriate when the plaintiff is *required* to avail himself of an alternate course of action as a precondition to filing suit." (Emphasis added). The Court noted that "[i]n this case, the filing of the [National Labor Relations Board] action was merely optional. Allowing tolling in this circumstance would frustrate the prompt resolution of labor disputes." *Id.* at 916.

Statutes of limitation are intended to "expedite litigation" and to "discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." *Holmes v. Strawbridge & Clothier, Inc.*, No. 94–1999, 1994 WL 649156 at *3 (E.D.Pa. Nov. 16, 1994). Allowing tolling here would only delay the resolution of Smith's federal claims. Smith argues that the timely filing of his administrative claim placed defendant "on notice that it must protect certain evidence from loss and certain witnesses from dis-

---

**2.** Contrary to Smith's assertion, the mere fact that *Burkhart* is non-precedential does not prevent me from "assess[ing] the Third Circuit's reasoning and [adopting] it independently, should this Court concur." *Hill v.* *Park*, No. 03–4677, 2004 WL 180044, at *3, 2004 U.S. Dist. LEXIS 1395, at *9 (E.D.Pa. Jan. 27, 2004), *citing Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F.Supp.2d 394, 399 n. 1 (E.D.Pa.2002).

appearance or memory loss and prepare for claims based on occurrences sometimes long in the past." *Peter v. Lincoln Tech. Inst., Inc.,* 255 F.Supp.2d 417, 428 (E.D.Pa.2002). Smith asserts that defendant was not prejudiced by his delay in filing his federal claims and cites to *Daviton v. Columbia/HCA Healthcare Corp.,* 241 F.3d 1131, 1136 (9th Cir.2001) in support of his argument that the running of the limitations period is tolled when an injured party has several legal remedies and in good faith chooses to pursue one so long as the defendant is not prejudiced by the delay.

■ *Daviton* is distinguishable however, because it was decided under California's doctrine of equitable tolling which is controlled by the requirements of "timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Id.* at 1137–38, *quoting Collier v. City of Pasadena,* 142 Cal. App.3d 917, 924, 191 Cal.Rptr. 681 (1983). Under California law the emphasis in determining when equitable tolling is merited is on lack of prejudice in evidence gathering. *Daviton* 241 F.3d at 1138. Under federal tolling principles however, a lack of prejudice is not sufficient in and of itself to warrant equitable tolling. The Supreme Court has held that "[a]lthough absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified,

it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Baldwin County Welcome Cntr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). *See also Donovan v. Henderson,* 45 Fed.Appx. at 180, 2002 WL 2004316 at *2 (3d Cir.2002) ("Donovan's claim of no prejudice which the Postal Service does not contest is, standing alone, insufficient to warrant equitable tolling.").

Thus even if defendant were not prejudiced by Smith's delay in filing his federal claims, Smith has not met his burden in establishing that equitable tolling would be justified. He has not shown that he was prevented from timely asserting his federal rights in some extraordinary way. Therefore I hold that Smith's ADA and Rehabilitation Act claims are time barred.

B. United States' Jurisdiction [3]

■ Although Smith's federal claims must be dismissed, the United States can pursue its action because it has a "separate and independent basis for jurisdiction" under Title II of the ADA and Section 504 of the Rehabilitation Act. *Fuller v. Volk,* 351 F.2d 323, 328 (3d Cir.1965).

[A] court has discretion to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor.... This discretionary procedure is properly utilized in a case in which it appears that the intervenor has a separate and independent basis for jurisdiction and in which failure to adjudicate the claim will result only in unnecessary delay. By

---

**3.** Where, as here, the federal government is enforcing a public right or protecting a private interest, state statutes of limitation do not run against it. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)("It is well settled that the United States is not bound by state statute of limitation or subject to the defense of laches in enforcing its rights."). *Cf. United States v. Atlantic Richfield Co.,* No 72–523, 1973 WL 540, at *1, 1973 U.S. Dist. LEXIS 13831, at *4 (E.D.Pa. Apr. 30, 1973) (holding "United States is not subject to a state statute of limitations when it sues in its governmental capacity to collect unpaid federal taxes in federal court").

allowing the suit to continue with respect to the intervening party, the court can avoid the senseless 'delay and expense of a new suit, which at long last will merely bring the parties to the point they are now.'

*Fuller,* 351 F.2d at 328–29, *quoting Hackner v. Guar. Trust Co.,* 117 F.2d 95, 98 (1941). *See also U.S. Steel Corp. v. EPA,* 614 F.2d 843, 845–46 (3d Cir.1979) ("The weight of the authority in the United States Courts of Appeals supports the principle that an intervenor can continue to litigate after dismissal of the party who originated the action.").

■ Title II of the ADA and Section 504 of the Rehabilitation act both incorporate the "remedies, procedures and rights" set forth in Title VI of the Civil Rights Act of 1964. *Barnes v. Gorman,* 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002). *See also* 42 U.S.C. § 2000d. Section 602 of Title VI, 42 U.S.C. § 2000d–1, authorizes the Attorney General to enforce compliance with Title VI by filing an action in federal court. *See Nat'l Black Police Ass'n, Inc. v. Velde,* 712 F.2d 569, 575 (D.C.Cir.1983); *United States v. Marion Cty. Sch. Dist.,* 625 F.2d 607, 612 n. 12 (5th Cir.1980). By extension, the Attorney General may also bring suit to enforce other statutes which adhere to the enforcement scheme set forth in Title VI. *See, e.g., United States v. Baylor Univ. Med. Ctr.,* 736 F.2d 1039, 1050 (5th Cir.1984) (recognizing United States' authority to sue to enforce Section 504); *Cannon v. Univ. of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)(holding a private right of action exists to enforce Title IX because Title IX "was patterned after Title VI"); *McCachren v. Blacklick Valley Sch. Dist.,* 217 F.Supp.2d 594, 600 (W.D.Pa.2002)(holding "the enforcement mechanism for Title II of the ADA is Section 505 of the Rehabilitation Act, and

therefore derivatively Title VI of the Civil Rights Act").

■ Section 602 further provides that the Department of Justice cannot bring an action until it has notified the appropriate persons of the alleged violation and determined that compliance cannot be secured voluntarily. 42 U.S.C. § 2000d–1. Here, the United States notified the City of Philadelphia of its investigation of the events set out in plaintiff Smith's complaint on March 4, 2004 in a letter to Deputy Solicitor Lynn Sitarski. Plaintiff United States subsequently notified defendant that it intended to intervene in this matter and inquired whether defendant had an interest in resolving the matter in a July 28, 2004 letter. After three weeks with no response from defendant, the United States filed its motion to intervene on August 17, 2004.

I will deny defendant's motion with respect to the claims of the United States because intervening plaintiff has a separate and independent basis for jurisdiction under Title II and Section 504 and it has met the procedural requirements of Section 602 of Title VI.

C. Smith's State and City Claims

■ Because this court has original jurisdiction over the United States' ADA and Rehabilitation Act claims, I have supplemental jurisdiction over Smith's state and local claims even though his federal claims are time-barred and the parties are not diverse. 28 U.S.C. § 1367 explicitly addresses supplemental jurisdiction in the context of intervention of additional parties and provides in part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, *in any civil action of which the district courts have original jurisdiction,* the district court *shall* have supplemental jurisdiction

over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties . . .*

(c) The district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 (emphasis added).

■ The situation here is unique because while I have original jurisdiction over the intervening plaintiff's claims, Smith's federal claims are time barred. Ordinarily, where a plaintiff's federal claim is time-barred and there is no basis for diversity jurisdiction, his pendent claims under state law cannot be maintained in federal court. *See, e.g., Hupp v. Gray*, 500 F.2d 993 (7th Cir.1974). However, Section 1367(a) does not appear to require that I have jurisdiction over Smith's federal claims in order to exercise supplemental jurisdiction over his state law claims as it provides for supplemental jurisdiction in "any civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367. Section 1367(a) does not dictate that I must have original jurisdiction over a specific party's federal claims in order to confer supplemental jurisdic-

tion over that party's state and local claims.

Because I have jurisdiction over the United States' claims all of the factors in Section 1367(a) are met. Smith's state and local claims are based on the same set of facts as the United States' claims under Title II of the ADA and Section 504 of the Rehabilitation Act. Smith and the United States seek the same type of injunctive and compensatory relief. *See Lyon v. Whisman*, 45 F.3d 758, 761 (3d Cir.1995) ("when the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious").

■ Further, none of the Section 1367(c) exceptions apply here. Smith's state and local claims do not raise a novel or complex issue of state law as they parallel the claims raised under Title II of the ADA and Section 504. "[D]istrict courts will exercise supplemental jurisdiction if the federal and state claims 'are merely alternative theories of recovery based on the same acts.'" *Lyon*, 45 F.3d at 761, *quoting Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979). Because Smith's state and local claims are parallel to the federal claims, they do not "predominate" over the United States' federal claims. Claims remain over which this court has jurisdiction because I will not dismiss the claims of the United States. Lastly, defendant has not raised any exceptional circumstances or compelling reasons to deny supplemental jurisdiction over plaintiff's state and local claims in the event that I did not dismiss the United States' federal claims. Therefore I will confer supplemental jurisdiction over Smith's state and local claims.

## ORDER

AND NOW, this 12th day of November 2004, after considering defendant's motion

for judgment on the pleadings and all responses thereto, it is hereby ORDERED that defendant's motion is for judgment on the pleadings is GRANTED as to plaintiff John Gill Smith's federal claims and his claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act are DISMISSED. In all other respects, defendant's motion is DENIED.