A.R., by and through her next friend, Susan ROOT, et al., Plaintiffs,

v.

Elizabeth DUDEK, in her official capacity as Secretary of the Agency for Health Care Administration, et al., Defendants.

United States of America, Plaintiff,

v.

The State of Florida, Defendants.

Case No. 13–61576–CIV.

United States District Court, S.D. Florida.

Signed May 30, 2014.

Edward J. Grunewald, Jamie Ito, Jill B. Zaborske, Tallahassee, FL, Paolo G. Annino, Tallahassee, FL, Matthew Wilson Dietz, Matthew W. Dietz, Miami, FL, Veronica Vanessa Harrell–James, United States Attorney's Office, Miami, FL, Joy Levin Welan, U.S. Department of Justice, Washington, DC, for Plaintiffs.

Michael Garrett Austin, DLA Piper LLP (U.S.), Miami, FL, Andrew T. Sheeran, Leslei Gayle Street, Stuart Fraser Williams, Agency for Health Care Administration, Tallahassee, FL, George N. Meros, Jr., Gray Robinson, Tallahassee, FL, Jennifer Ann Tschetter, Caryl Kilinski, Department of Health, Tallahassee, FL, Harry Osborne Thomas, Brittany Adams Long, Thomas Ames Crabb, Radey Thomas Yon & Clark, P.A., Tallahassee, FL, for Defendants.

### ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

ROBIN S. ROSENBAUM, District Judge.

This matter is before the Court on Defendant the State of Florida's Motion for Judgment on the Pleadings. [ECF No.

28]. The Court has reviewed the Motion, all supporting and opposing filings, and the case file and is otherwise fully advised in the premises. After consideration, the Motion for Judgment on the Pleadings in denied for the reasons set forth below.

## I. BACKGROUND

On July 22, 2013, the United States of America, through the Department of Justice, brought a single-count action against the State of Florida for violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"). *See* ECF No. 1. The Complaint alleges that nearly two-hundred children with disabilities are unnecessarily segregated in various nursing facilities, far from their communities. *Id.* ¶¶ 1–5. The Complaint further asserts that the State of Florida has reduced private-duty nursing and personal-care services provided to children who live in the community. Following a six-month investigation, the Department of Justice ("DOJ") brought this action because it determined that the State of Florida was in violation of the ADA, 42 U.S.C. §§ 12131–12134, because it unjustifiedly segregated institutionalized children, and it adopted policies and practices that place other children with disabilities at serious risk of similar institutionalization. *See id.* ¶ 5. According to DOJ, it made several attempts to resolve the alleged violations, but, after engaging in negotiations with the State, DOJ determined that compliance could not be achieved voluntarily. *Id.* Consequently, on July 22, 2013, on behalf of the affected children, the United States filed the instant action seeking injunctive and declaratory relief as well as compensatory damages (the "DOJ Action"). *See* ECF No. 1.

Prior to the filing of the DOJ Action, in March of 2012, various children who have been diagnosed as "medically fragile" and who qualify for services through Florida's Medicaid program filed a class-action lawsuit against certain State of Florida agency heads as well as against eQHealth Solutions, Inc., the non-profit corporation that has contracted with the State of Florida to provide prior authorization of home health services. The lawsuit is styled *A.R. et al. v. Dudek et al.*, Case No. 12–CV–60460 (S.D.Fla.) (the "Children's Case"). The plaintiffs in the Children's Case brought claims similar to those made by DOJ—claims for violations of the ADA. The Children's Case also alleged other additional claims [1] and sought a declaration by the Court that the State's and eQHealth's policies, regulations, actions, and omissions are unnecessarily institutionalizing members of the Plaintiff Class or putting Plaintiffs at risk of being placed into segregated facilities. *See A.R. v. Dudek,* Case No. 12–60460 at ECF No. 62. After pretrial litigation ensued, Plaintiffs in the Children's Case filed a Motion to Consolidate Cases with the DOJ Action. *See A.R. v. Dudek,* Case No. 12–60460 at ECF No. 192. Determining that the DOJ Action and the Children's Case involved common, complex issues of fact and law, this Court granted the Motion to Consolidate on December 6, 2013. *See* ECF No. 34.

Prior to consolidation of these cases, a third party, Disability Rights Florida, Inc., sought to intervene as a Plaintiff in the DOJ Action. The State opposed the Motion to Intervene, contending that Disability Rights Florida's interests were adequately represented by the existing parties

---

**1.** For example, in the Children's Case, Plaintiffs alleged violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Medicaid Act, 42 U.S.C. §§ 1396–1396v; the Nursing Home Reform Amendments to the Medicaid Act, 42 U.S.C. § 1396r; Early and Periodic Screening, Diagnostic, and Treatment Services, 42 U.S.C. § 1396d(r) provisions; and 42 U.S.C. § 1983.

to the litigation. *See* ECF No. 25. More specifically, the State averred that "[t]he United States of America has ample resources, institutional experience, and all possible incentives to prosecute this case with vigor." *Id.* at 2.[2] In denying the Motion to Intervene, the Court noted that although its Complaint included additional facts that resulted from its own investigation, Disability Rights Florida's proposed complaint contained the same claims brought by DOJ and Plaintiffs in the Children's Case. The proposed complaint also sought the same relief sought by the parties to the pending action. *See* ECF No. 39. Finding that all of the plaintiffs' rights were adequately represented in the consolidated matter, the Court denied the Motion to Intervene.

Pending before the Court now is the State's Motion for Judgment on the Pleadings [ECF No. 28]. In the State's words, the motion presents "a single, dispositive question of law: has Congress authorized the Attorney General to sue under Title II of the Americans with Disabilities Act?" *See* ECF No. 28 at 2. The State contends that the answer to this question is "no" because the United States lacks standing to sue under Title II. In this regard, the State now makes a complete about-face from the position that it took in opposing the Motion to Intervene. Indeed, in seeking to have the Court declare that DOJ has no authority to bring its action under Tile II of the ADA, it espouses the opposite of its prior argument that intervention by Disability Rights Florida was not necessary because Plaintiffs' rights were adequately represented by the United States of America.

In support of its current position that DOJ lacks standing, the State notes that although Congress specifically authorized the Attorney General to sue under Titles I and III of the ADA, such express authorization is absent from Title II of the ADA. Nor, the State asserts, does Title VI of the Civil Rights Act of 1964, whose enforcement provision Title II incorporates, authorize suit by the Attorney General. Ultimately, as the State acknowledges, this issue implicates three statutes: Title II of the ADA, which incorporates enforcement provisions of the Rehabilitation Act of 1973, which in turn, incorporates provisions of Tile VI of the Civil Rights Act of 1964. According to the State, because no provision in Title II sets forth explicitly the authority of the Attorney General to sue, this fact alone is conclusive of the issue of standing. The State further contends that the statutes that Title II incorporates demonstrate that Congress did not authorize the Attorney General to seek enforcement of Title II of the ADA through litigation.

DOJ opposes the motion, arguing that the State's reading of the ADA is "wholly unsupported by the statute's text, structure, purpose, and history." *See* ECF No. 226 at 2. According to DOJ, in enacting Title II of the ADA, Congress expressly incorporated the remedies and regulatory procedures used in the enforcement of Section 504 of the Rehabilitation Act of 1973 (codified at 29 U.S.C. § 794). And, those remedies, in turn, were derived from Title VI of the Civil Rights Act of 1964, which proscribes discrimination on the basis of race, color, or national origin by state and local government entities receiving federal funds. In further support of its position, DOJ points out that "Section 504 and Title VI was (and is) coordinated by the Attorney General through regula-

---

**2.** The State further asserted "[b]ecause it pursues the same objectives as the United States, Disability Rights Florida bears the burden to adduce evidence demonstrating that the United States will inadequately represent its interest. This it cannot do." *See* ECF No. 25 at 4.

tions directing agencies that administer federal funds to secure prompt and full compliance from funding recipients through (1) denial or termination of funding, and/or (2) referral to the Department of Justice to initiate litigation." *See* ECF No. 226 at 2 (citing 28 C.F.R. §§ 42.401–.415; 50.3 (Title VI); 28 C.F.R. § 41.5 (Section 504)). According to DOJ, Title II of the ADA thus incorporates the ability of the federal government to bring enforcement litigation.

DOJ also emphasizes the fact that, as directed by Congress, DOJ adopted regulations implementing Title II by establishing investigative and compliance procedures. *See* ECF No. 226 at 2 (citing 28 C.F.R. §§ 35.170–.173). According to DOJ, the regulations of Title II provide that when voluntary compliance is not possible, the Attorney General can "take action to secure an appropriate remedy, including filing a lawsuit." *See id.* (citing 28 C.F.R. § 35.174). In this regard, 28 C.F.R. § 35.174 allows agencies to "refer the matter to the Attorney General with a recommendation for appropriate action" and, according to DOJ, the primary course of action available to the Attorney General to induce compliance is litigation. *See id.* at n. 1. Finally, DOJ points out that it has enforced Title II of the ADA through litigation as well as settlement agreements and that a number of courts have acknowledged DOJ's ability to bring suit, intervene, and enter into settlement agreements under Tile II.

## II. DISCUSSION

### A. Standard for Judgment on the Pleadings

■ The State of Florida filed its Motion for Judgment on the Pleadings pursuant to Rule 12(c), Fed.R.Civ.P. Rule 12(c) provides, "After the pleadings are closed—but early enough not to delay trial—a par-

ty may move for judgment on the pleadings." Judgment on the pleadings is appropriate where no material facts are in dispute and the moving party is entitled to judgment as a matter of law. *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.,* 404 F.3d 1297, 1303 (11th Cir.2005) (citation omitted). When reviewing a motion for judgment on the pleadings, the Court is obligated to view the facts in a light most favorable to the nonmoving party and may grant the motion only if it finds that the nonmoving party "can prove no set of facts which would allow it to prevail." *See id.* (internal citation omitted).

### B. Judgment on the Pleadings is Not Warranted

■ The Court denies the State's Motion for Judgment on the Pleadings because it finds DOJ's interpretation of Title II to be a reasonable construction of the statute. *See City of Arlington, Tex. v. FCC,* —— U.S. ——, ——, 133 S.Ct. 1863, 1868, —— L.Ed.2d —— (2013) ("[s]tatutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency") (citation omitted). When reviewing an agency's construction of the statute that it administers, courts confront two questions. First, a court must determine " 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' " *City of Arlington,* 133 S.Ct. at 1868 (quoting *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agen-

cy's answer is based on a permissible construction of the statute." *Id.* (citation and internal quotation marks omitted). Consequently, any statutory ambiguities are resolved, "within the bounds of reasonable interpretation, not by the courts but by the administering agency." *Id.* (citation omitted).

DOJ points out, and the State agrees, that in enacting Tile II of the ADA, Congress incorporated the remedies and regulatory procedures used in the enforcement of Section 504 of the Rehabilitation Act and that those remedies were, in turn, derived from Title VI of the Civil Rights Act. Because both Section 504 and Title VI have been interpreted to authorize the United States to bring enforcement litigation, DOJ argues, Title II's incorporation of those laws' remedies authorize DOJ to bring litigation to enforce Title II. DOJ's interpretation is a reasonable construction of the statute.

Title II of the ADA prohibits discrimination against individuals with disabilities and states,

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C.A. § 12132. The enforcement provision of Title II provides, "The remedies, procedures, and rights set forth in [Section 505 of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title." 42 U.S.C. § 12133.

In turn, Section 505 of the Rehabilitation Act states,

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

29 U.S.C. § 794a(a)(2).

Finally, Title VI of the Civil Rights Act provides, in relevant part,

> Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken.... Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue [federal assistance] ... or (2) *by any other means authorized by law: Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means.

42 U.S.C. § 2000d–1 (emphasis added).

Various courts have interpreted the phrase "by any other means authorized by law" to mean that, if an offending entity violates the statute and compliance is not

forthcoming, the funding agency may refer the matter to DOJ to enforce the statute's nondiscrimination requirements in court. *United States v. City and County of Denver*, 927 F.Supp. 1396, 1400 (D.Colo.1996) (citing *Nat'l Black Police Ass'n, Inc. v. Velde*, 712 F.2d 569, 575 & n. 33 (D.C.Cir. 1983), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984); *United States v. Marion County Sch. Dist.*, 625 F.2d 607, 612 & n. 12 (5th Cir.1980), *cert. denied*, 451 U.S. 910, 101 S.Ct. 1980, 68 L.Ed.2d 298 (1981)). Indeed, in *Smith v. The City of Philadelphia*, a Title II case in which the United States intervened, the court determined that, by extension of Title VI, "the Attorney General may also bring suit to enforce other statutes which adhere to the enforcement scheme set forth in Title VI." 345 F.Supp.2d 482, 490 (E.D.Penn.2004) (citing *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1050 (5th Cir.1984) (recognizing United States's authority to sue to enforce Section 504 of the Rehabilitation Act); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (holding a private right of action exists to enforce Title IX because Title IX "was patterned after Title VI"); *McCachren v. Blacklick Valley Sch. Dist.*, 217 F.Supp.2d 594, 600 (W.D.Pa.2002) (holding "the enforcement mechanism for Title II of the ADA is Section 505 of the Rehabilitation Act, and therefore derivatively Title VI of the Civil Rights Act")). In *Smith*, the court concluded that although the individual plaintiff's claims were dismissed, the United States was permitted to pursue its Title II action because "it has a 'separate and independent basis for jurisdiction' under Title II of the ADA and Section 504 of the Rehabilitation Act." *Smith*, 345 F.Supp.2d at 489. (quoting *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir.1965)). These cases all support DOJ's assertion that it has standing to bring suit under Title II of the ADA.

The regulations of both Section 504 of the Rehabilitation Act and Title VI further support the conclusion that DOJ may initiate litigation under Title II. *See* 28 C.F.R. § 42.401 (stating that the purpose of the regulations is to properly enforce Title VI of the Civil Rights Act of 1964); 28 C.F.R. § 42.411 (if voluntary compliance is not achieved with respect to Title VI violation, "the agency shall initiate appropriate enforcement procedures as set forth in the 1965 Attorney General Guidelines, 28 C.F.R. § 50.3"); 28 C.F.R. § 50.3 (referencing court enforcement); 28 C.F.R. § 41.5 (regulations of Section 504 of the Rehabilitation Act incorporate the enforcement and hearing procedures for the enforcement of Title VI).

Moreover, 42 U.S.C. § 12134 directs the Attorney General to promulgate regulations implementing Title II that are consistent with the regulations implementing Section 504 of the Rehabilitation Act. The Title II regulations allow a private individual who believes that he or she has been subjected by a public entity to discrimination on the basis of disability to file a complaint. *See* 28 C.F.R. 35.170. Federal agencies, including DOJ, are required to accept these complaints of discrimination by individuals and may then complete an investigation or conduct a compliance review and attempt informal resolution. *Id.;* 28 C.F.R. § 35.171–172. If informal resolution is not achieved and a violation is found, DOJ may issue a letter of findings that includes a description of a remedy for each violation and a notice of rights and procedures available. 28 C.F.R. § 35.172(c). And, if DOJ has issued a letter of findings and the public entity has declined to comply voluntarily, DOJ "shall refer the matter to the Attorney General with the recommendation for appropriate action." 28 C.F.R. § 35.174. DOJ argues that appropriate action includes bringing

suit under Title II of the ADA. The Court agrees.

Other courts have also recognized that DOJ has authority both to bring suit under Title II and to intervene in litigation brought by private individuals. *See e.g., United States v. N. Ill. Special Recreation Ass'n*, 2013 WL 1499034 at *5 (N.D.Ill. April 11, 2013) (denying motion to dismiss in Title II action brought by the United States alleging discriminatory segregation against individuals with epilepsy); *United States v. City of Baltimore*, 845 F.Supp.2d 640, 642–43 (D.Md.2012) (granting summary judgment in Title II action brought by DOJ); *Disability Advocates, Inc. v. Paterson*, 2009 WL 4506301 at *2 (E.D.N.Y. Nov. 23, 2009) (allowing intervention by DOJ in Title II action alleging that individuals with mental illness were denied the opportunity to receive services in the most integrated setting appropriate to their needs); *United States v. City and County of Denver*, 927 F.Supp. 1396, 1400 (D.Colo.1996) (finding that the United States has authority to initiate action under Title II of the ADA to enforce the provisions of the Act); *Smith v. The City of Philadelphia*, 345 F.Supp.2d 482, 490 (E.D.Penn.2004) (upon dismissal of private individual's claim, the court retained jurisdiction over the United States's Title II claim, finding a "separate and independent basis for jurisdiction under Title II of the ADA and Section 504 of the Rehabilitation Act").

DOJ emphasizes that no court has denied it the right to litigate ADA Title II claims or to intervene in these types of lawsuits. Indeed, the State has pointed to no case that expressly held that DOJ is not authorized to litigate ADA Title II claims. Nor has this Court found any case that directly supports the State's contention that DOJ lacks standing to bring actions to enforce Title II violations.

Finally, Executive Order 13217 supports DOJ's argument that it is authorized to bring suit to enforce Title II of the ADA. Executive Order 13217 was issued in the wake of the Supreme Court case *Olmstead v. L.C.*, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). In *Olmstead*, the Supreme Court concluded that under Title II of the ADA, states must place individuals with mental disabilities in community settings rather than in institutions when a determination has been made that community placement is appropriate, the transfer from an institution to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated. 527 U.S. at 582, 119 S.Ct. 2176. The principle underlying *Olmstead's* holding is its recognition that unnecessary isolation and segregation of individuals with disabilities constitutes discrimination under the ADA.

Shortly after the Supreme Court's decision in *Olmstead*, President George W. Bush issued an executive order that referenced *Olmstead* and recognized that the "[u]njustified isolation of or segregation of qualified individuals with disabilities through institutionalization is a form of disability-based discrimination prohibited by Title II of the [ADA]." *See* Exec. Order No. 13217, 66 Fed.Reg. 33,155 (June 18, 2001). The executive order continued, stating that the Federal Government must assist States to implement the *Olmstead* decision in a swift manner. Significantly, Section 2(c) of the executive order directed the Attorney General and the Secretary of Health and Human Services to "fully enforce Title II of the ADA, including investigating and resolving complaints filed on behalf of individuals who allege that they have been the victims of unjustified institutionalization." *See id.* Executive Order 13217's directive that the Attorney General *fully* enforce Title II further supports

DOJ's contention that it is authorized to bring suit under Title II.

In short, DOJ offers a reasonable interpretation of Title II—that when voluntary compliance is not possible, the Attorney General has the authority to take action to secure an appropriate remedy, including by filing a lawsuit. *See City of Arlington*, 133 S.Ct. at 1868 (2013). Accordingly, the State's Motion for Judgment on the Pleadings is denied.

## III. CONCLUSION

For the foregoing reasons, The State of Florida's Motion for Judgment on the Pleadings [ECF No. 28] is **DENIED.**